## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

**BOARD OF COMMISSIONERS OF
CHEROKEE COUNTY, KANSAS**
Cherokee County Courthouse
100 West Maple Street
PO Box 14
Columbus Kansas 66725-0014,

Case No.

Plaintiff,

v.

**DIRK KEMPTHORNE, in his official
capacity as the SECRETARY OF THE
INTERIOR**
1849 C Street, N.W.
Washington DC 20240

**and the**

**UNITED STATES DEPARTMENT OF
THE INTERIOR**
1849 C Street, N.W.
Washington DC 20240,

Defendants.

---

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

#### Introduction

1.     This is an action for declaratory and injunctive relief brought under the

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, the Declaratory Judgment Act

("DJA"), 28 U.S.C. §§ 2201 and 2202, the National Environmental Policy Act ("NEPA"), 42

U.S.C. § 4321 *et seq.*, and the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.*, to challenge actions of the defendants that, unless enjoined, will permit construction of a large casino development just across the border of Cherokee County in Oklahoma, without any review of the significant environmental impacts of the construction or the future casino operations on the human environment in violation of the laws of the United States.

### Parties

2.     Plaintiff Board of Commissioners of Cherokee County, Kansas, is the body politic and corporate for Cherokee County and is empowered under Kansas law to, among other powers, sue and be sued and to exercise the powers of home rule.  <u>See</u> K.S.A. §§  K.S.A. 19-101, 19-101a.

3.     Defendant Dirk Kempthorne is the appointed Secretary of the Department of the Interior, the agency of the United States that is responsible for and has administrative authority over Indian lands by and through its bureaus and agencies, including the Bureau of Indian Affairs, and, in his official capacity as trustee for the Quapaw Tribe and its members, represents the United States as the owner of certain lands being used in the casino development project at issue in this case.

4.     Defendant United States Department of the Interior ("DOI") is the agency of the federal government that is responsible for and has administrative authority over Indian affairs by and through its bureaus and agencies, including the Bureau of Indian Affairs ("BIA").

### Jurisdiction and Venue

5.     This Court has jurisdiction pursuant to the Administrative Procedures Act, 5 U.S.C. §§ 701-06, because this action seeks review of administrative decisions.  This Court also has jurisdiction under 28 U.S.C. §§ 1331, 2201, 2202.

2

6.      Venue lies in this Court pursuant to 28 U.S.C. § 1391(e), pertaining to civil actions against officers and employees of the United States sued in their official capacities, because the defendants reside in this district and because a substantial part of the events or omissions giving rise to this complaint occurred in this district.

**Facts Entitling Plaintiff to Relief**

<u>Quapaw Tribe's development and construction of a casino resort.</u>

7.      On or about May 14, 2007, the Quapaw Tribe of Oklahoma held a press conference at which it announced its plans for a large scale $200 million casino resort in the northeast corner of Ottawa County, Oklahoma, where the borders of Oklahoma, Kansas and Missouri meet. According to the Tribe, the casino is scheduled to open July 4, 2008, and to operate 24 hours a day, seven days a week and 365 days a year, attracting two million visitors per year to a development with more than 70,000 square feet of casino floor space, and more than 2,000 slot machines, 30 table games and 15 poker tables.

8.      The Quapaw also stated that the tribe had been planning the project since 1990, and disclosed that it had acquired more than 235 acres in Oklahoma, Kansas and Missouri to build the resort, including 85 acres in Oklahoma, 120 acres in Cherokee County, Kansas, and 30 acres in Missouri.

9.      The Quapaw held a groundbreaking ceremony for the development, which the Quapaw call the Downstream Casino Resort, in July 2007. Current construction includes the casino, a hotel, restaurants, shopping areas and a 10,000-square-foot meeting center. According to the Quapaw, the 12-story hotel will be visible for three miles in each direction from the interstate highway. The Quapaw also plan a second phase of development that includes a conference center, spa and salon, and have plans for further development.

3

10.    The casino-hotel structure is located on a 40-acre parcel of land called the Meh-No-Bah Allotment.  The Meh-No-Bah Allotment is located in an undeveloped area with no existing roads prior to the start of construction.  In order to bring casino resort customers to the casino-hotel structure, the Quapaw must build a road to connect the development to Route 166, which runs through Cherokee County, Kansas, and into Missouri.

11.    The current phase of the Quapaw casino resort development includes a large parking area designed to hold over 2200 cars as well as buses and recreational vehicles, which is located in Cherokee County, Kansas.  As planned, the Quapaw development contains no other parking area to support its casino resort development except for the parking area in Cherokee County.  The Quapaw Tribe purchased the land in Cherokee County on which the parking facilities have been built in or around 2006 and, on information and belief, the Quapaw hold title to it in the Tribe's own name and under no restrictions on alienation.

12.    The Quapaw have engaged in construction on this project since the Spring of 2007 without any federal review of the project's significant environmental effects under the National Environmental Policy Act or other applicable federal statutes.

Land Acquisition for the Quapaw Casino Resort Area

13.    As described more fully below, federal law imposes strict requirements on the development of Indian gaming facilities, including requirements relating to ownership of the land on which such facilities may lawfully be operated.  Between May and July 2007, the Secretary of the Interior took the significant step of accepting into trust for the benefit of the Quapaw Tribe land interests totaling a five-sixths interest in the 40-acre Meh-No-Bah Allotment, on which the casino hotel structure is to sit.  And, in or around July 2007, the Secretary conveyed

4

a one-sixth interest in the Meh-No-Bah allotment from the estate of an individual Indian of the Creek tribe to the Quapaw under restrictions against alienation.

14.     Both the trust acquisition and the conveyance were purportedly effected pursuant to the Indian Land Consolidation Act ("ILCA"), 25 U.S.C. § 2201 et seq.  Enacted to address the problem of fractionated land interests on allotment lands, ILCA authorizes DOI to acquire fractional interests in land in trust for the benefit of tribes.  ILCA expressly provides that the general statute authorizing the Secretary to acquire land in trust for Indians, 25 U.S.C. § 465, applies to acquisitions under ILCA.  25 U.S.C. § 2202.

15.     Trust land acquisitions under Section 465 are governed by regulations promulgated by the Secretary and codified in 25 C.F.R. Part 151.  Although Section 465 conferred substantial discretion on the Secretary respecting trust acquisitions, the Secretary's discretion is circumscribed by the requirements set out in 25 C.F.R. Part 151.  Part 151 expressly applies to acquisition of fractional interests.

16.     Defendants' acquisition of the five-sixths interest in the Meh-No-Bah Allotment for the Quapaw in 2007 falls within 25 C.F.R. Part 151, and was subject to 25 C.F.R. § 151.10.  Section 151.10 expressly requires that "the Secretary will consider [the specified] criteria in evaluating requests for the acquisition of land in trust status[,]" including among other requirements, the "purposes for which the lands will be used" and "the extent to which the applicant has provided information that allows the Secretary to comply with [the BIA's] National Environmental Policy Act Revised Implementing Procedures[.]"

17.     The Secretary or his designees acquired the five-sixths interest in the Meh-No-Bah allotment in trust for the Quapaw without considering the use to which the Tribe planned to

5

put the trust lands, and without complying with the BIA's guidelines for NEPA compliance or
with NEPA itself.

18.    Acquisitions of land in trust and other conveyances of land to tribes for gaming
purposes are also subject to the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. 2701 *et seq.*
Under IGRA, tribes may operate gaming enterprises only on "Indian lands," which consist of (1)
"lands within the limits of any Indian reservation" and (2) "lands title to which is . . . held in trust
by the United States for the benefit of any Indian tribe or . . . held by any Indian tribe . . . subject
to restriction by the United States against alienation and over which an Indian tribe exercises
governmental power."

19.    IGRA also imposes a broad prohibition against gaming on land taken into trust
after October 17, 1988, unless certain narrow exceptions apply.  Section 20 of IGRA, 25 U.S.C.
§ 2719, provides that "gaming regulated by [IGRA] shall not be conducted on lands acquired by
the Secretary in trust for the benefit of an Indian tribe after [October 17, 1988] unless . . .(2) the
Indian tribe has no reservation on [October 17, 1988] and (A) such lands are located in
Oklahoma and (i) are within the boundaries of the Indian tribe's former reservation, as defined
by the Secretary, or (ii) are contiguous to other land held in trust or restricted status by the
United States for the benefit of the Indian tribe[.]"

20.    In accordance with official DOI policy, all gaming-related trust acquisitions and
land conveyances must be referred to the Office of Indian Gaming in the Assistant Secretary for
Indian Affairs' Office of Policy and Economic Development in Washington, D.C..  No trust
acquisitions or land conveyances for purposes of gaming may take place until the Office of
Indian Gaming has approved the acquisition.

21.     BIA personnel did not refer the Quapaw trust acquisition of the five-sixths interest or the conveyance of the one-sixth interest to the Office of Indian Gaming, in contravention of the DOI policy.

22.     All land-into-trust acquisitions and land conveyances are also subject to NEPA and BIA's NEPA guidelines.  BIA's NEPA guidelines create an exemption from environmental review for certain land conveyances, but not surprisingly, that exemption from environmental review applies only to those land acquisitions and conveyances in which no change in land use is planned.  The exemption does not apply to the property actions at issue here, because the tribe indisputably planned to use some or all of the Meh-No-Bah allotment lands to build and operate its planned casino development.

23.     Sometime between July 2007 and December 20, 2007, the Quapaw submitted a land-into-trust application to BIA for the one-sixth interest in the Meh-No-Bah Allotment.  The Quapaw withdrew the trust application on or about January 2008 after BIA indicated it would perform an environmental review under NEPA in connection with the acquisition process under 25 C.F.R. Part 151.  On information and belief, the Quapaw intend to submit an application to the Secretary seeking to have the land on which the casino parking lot is to be built in Cherokee County taken into trust.

Injury to Cherokee County Caused by Defendants' Conduct

24.     Like the Ottawa County, Oklahoma, area where the Meh-No-Bah Allotment is located, the southeast corner of Cherokee County is composed primarily of undeveloped woodlands and wetlands and agricultural lands.  The county's total population is approximately 21,000 located across 590 square miles.

7

25.    For over a century beginning after the Civil War, heavy coal, lead and zinc

mining was conducted in Cherokee County and a number of surrounding counties in Kansas,

Missouri and Oklahoma (including Ottawa County, where the Meh-No-Bah allotment is located).

The topography and environment of Cherokee County and other surrounding counties in the tri-

state mining area bear the legacy of this history.  The tri-state mining area contains at least one

Superfund site and is broadly monitored by the U.S. Department of Environmental Protection.

The defendants took the property actions at issue in this case without considering environmental

impacts, including those associated with this history of intensive mining.

26.    Under Kansas law, Cherokee County is responsible for the maintenance and

repair of its county roads.  It will bear the cost of repairing its roads that have already been

damaged by Quapaw construction equipment, just as it will bear the cost imposed by the

dramatic increase in vehicle traffic caused by the Quapaw's 24-hour a day, 365-day a year casino

resort.  Likewise, Cherokee County will the bear the full brunt of the public safety burden caused

by Quapaw casino customers' vehicular accidents, and of any crime or disorderly behavior that

spill into the parking lot or further into the county.  Based on the limited information available,

plaintiff estimates that it will need to fund five additional law enforcement personnel to patrol

the vicinity of the casino parking area and respond to service calls in the area.  Plaintiff also

estimates it will need to fund a new public safety facility in the vicinity of the Quapaw casino to

provide timely and adequate fire and ambulance services to that area of the county.  Under

Kansas law, the county bears the cost of all public safety services in unincorporated areas.  The

defendants took the property actions at issue in this case without considering environmental

impacts, including those associated with the flow of millions of casino customers into the

sparsely populated areas in and near Cherokee County.

\\\DC - 023312/000002 - 2686789 v1

Suspected Clean Water Act Violations

27.     Because the defendants conducted no environmental assessment or environmental impact analysis before taking the property actions at issue, they have created no record on which to base any systematic review of the environmental impacts of the planned Quapaw casino development.  Nevertheless, a prominent international environmental consulting firm recently conducted a review and analysis of publicly available information, including state and federal permits, concerning the Quapaw casino development.  Its personnel also conducted a site assessment, to the extent possible from public lands and roadways adjoining the Quapaw construction site.

28.     That analysis concluded that there were likely violations of the Clean Water Act, 33 U.S.C. §§ 1251 et seq..  Specifically, it appears likely that the Quapaw is (1) dredging and/or filling waters of the United States without a Clean Water Act Section 404 permit or Section 401 certification and (2) violating various terms of the Kansas Stormwater Runoff from Construction Activities General Permit and Oklahoma Storm Water General Permit for Construction Activities.  These violations constitute violations of the CWA and its regulations and are grounds for an enforcement action under 40 C.F.R. § 122.41(a).

29.     Plaintiff has served a Notice of Violations and Intent to File Suit under the Federal Clean Water Act on the Quapaw pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365, and has referred the matter to the Army Corps of Engineers to request an investigation.

Kansas Expanded Lottery Act

30.     Cherokee County is likely to become the location for one of the four State Lottery-owned gaming facilities authorized by the 2007 Kansas Expanded Lottery Act, if that

\\\DC - 023312/000002 - 2686789 v1

Act is upheld by the Kansas Supreme Court. The Kansas Expanded Lottery Act is currently the subject of a state constitutional challenge. The Act was upheld by the Shawnee County District Court and is now under review by the Kansas Supreme Court.

31.     Pursuant to this Act, Cherokee County held an election in which county residents voted in favor of locating a Kansas Lottery casino in the county. Thereafter, the County solicited statements of qualifications from parties wishing to be considered to serve as the casino developer and manager. Following public hearings, the County approved a resolution endorsing the application of Kansas Penn Gaming, an affiliate of Penn National Gaming, Inc.

32.     Each step in this process was conducted in public, with full participation of the people of Cherokee County. In addition, unlike the Quapaw development, consideration of siting a Kansas Lottery casino in Cherokee County has been conducted in a way that assures comprehensive analysis of its environmental, infrastructural, and public finance impacts. Kansas Penn Gaming is fully supporting Cherokee County's effort to assure that all environmental, infrastructural, and public finance impacts associated with gaming in the area are properly addressed. With respect to the possible Kansas Lottery casino, Kansas Penn Gaming has committed to full compliance with Kansas environmental laws and standards and with any applicable federal environmental laws, and has committed to address infrastructural and public finance impacts by providing specific reimbursement for the infrastructural and public safety costs incurred due to the Kansas Lottery casino if it is built and operated. Under the Act, Cherokee County would also receive 2% of gaming revenue generated by a casino in its jurisdiction. Penn Gaming is also supportive of this lawsuit, aimed at assuring full analysis and mitigation of environmental and other impacts on Cherokee County and its citizens arising from the planned Quapaw development in Cherokee County and just across its border.

\\\DC - 023312/000002 - 2686789 v1

COUNT 1

*Against All Defendants*

Violation of the Administrative Procedures Act Through Approval of Trust Acquisition and Land Conveyance in Violation of IGRA and Defendants' Gaming Acquisition Policy

33.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

34.    Defendants' trust acquisition of five-sixths interest in the Meh-No-Bah Allotment and conveyance of the one-sixth interest to the tribe under restrictions against alienation is a final agency action within the meaning of the APA.

35.    Defendants' trust acquisition of the five-sixths interest for the benefit of the Quapaw and land conveyance of the one-sixth interest to the Quapaw under restrictions against alienation in the Meh-No-Bah Allotment are final agency actions within the meaning of the APA.

36.    Defendants knew or should have known that the Meh-No-Bah transactions were undertaken in order to build a casino development.

37.    In enacting the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 *et seq.*, the Congress placed strict limitations on Indian gaming on lands acquired after the date of enactment, October 17, 1988.  To carry out its duties under IGRA, the Department of Interior promulgated a policy concerning land acquisitions and conveyances for Indian gaming.

38.    Defendants failed to follow the Department's gaming acquisition policy that requires all trust acquisitions and conveyances that are gaming-related to be submitted for approval to the Office of Indian Gaming, and to comply with 25 C.F.R. Part 151 and NEPA, among other requirements.

39.    As a result of defendants' failure to comply with the law, the Quapaw casino resort has been under construction for many months.  The construction and future operation of

the casino resort have caused and will continue to cause known and unknown significant

economic and environmental impacts that injure plaintiffs.

40.    Defendants' failure to follow the gaming acquisition policy and conduct the

required procedures, including compliance with NEPA, in connection with the trust acquisition

and land conveyance in the Meh-No-Bah Allotment was arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law and without observance of procedure

required by law.

COUNT 2

*Against All Defendants*<br>Violation of the Administrative Procedures Act Through Approval of Trust Acquisition<br>in Violation of NEPA, 25 CFR Part 151 and Department Policy

41.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth

herein.

42.    Defendants' trust acquisition of five-sixths interest in the Meh-No-Bah Allotment

is a final agency action within the meaning of the APA.

43.    Defendants approved the trust acquisition without following the procedures

mandated by 25 C.F.R. Part 151, which include the requirement of compliance with NEPA, and

without complying with the NEPA statute itself or the BIA's NEPA policy.

44.    Defendants also failed to comply with the requirement that public notice of the

trust acquisition be provided by notice in the Federal Register or in a local newspaper, thereby

depriving plaintiffs and other interested parties from learning of the trust acquisition prior to the

defendants' final decision.

45.    As a result of defendants' failure to comply with the law, the Quapaw casino

resort has been under construction for many months.  The construction and future operation of

12

the casino resort have caused and will continue to cause known and unknown significant environmental impacts that injure plaintiffs.

46.     Defendants' failure to conduct the required trust acquisition procedures, including compliance with NEPA, in connection with taking the five-sixths interest in the Meh-No-Bah Allotment into trust was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and without observance of procedure required by law.

**Prayer for Relief**

WHEREFORE, Plaintiff prays:

1.     For judgment against the Secretary of the Interior and the Department of the Interior declaring that the defendants' acquisition of trust lands and conveyance of interests in land in the Meh-No-Bah Allotment are presently invalid because they were accomplished without observance of law;

2.     For an injunction prohibiting the Secretary from proceeding with any pending land conveyances relating to the Quapaw casino development and requiring the Secretary of the Interior to reopen the trust acquisitions and conveyance of the Meh-No-Bah Allotment interests and to make determinations concerning these acquisitions and conveyances in compliance with 25 C.F.R. Part 151 and Defendants' Gaming Acquisition Policy, including review under NEPA, before permitting further construction or operation of the Quapaw casino development;

3.     For an injunction requiring the Secretary of the Interior, as legal owner of the relevant real property, and all those acting in concert with him, to stop all construction activity on the property and to prohibit gaming operations until the Secretary has complied with applicable law by, among other things, completing an environmental assessment and, if necessary, an environmental impact statement as required by NEPA;

13

3.      For an award of attorney fees and expenses pursuant to Section 305 of the Equal

Access to Justice Act; and

4.      Such other relief that the Court deems proper.


Dated: February 25, 2008

                                           Respectfully submitted,

                                           Jonathan L. Abram, D.C. Bar No. 389896
                                           jlabram@hhlaw.com
                                           Audrey E. Moog, D.C. Bar No. 468600
                                           amoog@hhlaw.com
                                           HOGAN & HARTSON LLP
                                           555 Thirteenth Street, NW
                                           Washington, DC  20004–1109
                                           (202) 637-5600 (Telephone)
                                           (202) 659-5910 (Facsimile)

C. Dean McGrath, Jr., D.C. Bar No. 453574      David R. Cooper
dmcgrath@manatt.com                            dcooper@fisherpatterson.com
June DeHart, D.C. Bar No. 362871               FISHER, PATTERSON, SAYLOR &
jdehart@manatt.com                             SMITH, LLP
MANATT, PHELPS & PHILLIPS, LLP                 3550 SW 5th Street
700 Twelfth St. NW                             Topeka, KS 66601
Suite 1100                                     (785) 232-7761 (Telephone)
Washington, DC 20005                           (785) 232-6604 (Facsimile)
(202) 585-6500
(202) 585-6600

                                               *Counsel for Board of Commissioners of Cherokee
                                               County*

\\\DC - 023312/000002 - 2686789 v1

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

### I (a) PLAINTIFFS

Board of Commissioners of Cherokee County, Kansas

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _88888_
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Jonathan L. Abram
Audrey E. Moog
HOGAN & HARTSON LLP, 555 13th St. NW
Washington, DC 20004

### DEFENDANTS

Dirk Kempthorne, in his official capacity as Secretary of the Interior; U.S. Dept. of the Interior

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _11001_
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Case: 1:08-cv-00317
Assigned To : Lamberth, Royce C.
Assign. Date : 2/25/2008
Description: TRO/PI

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- 1 U.S. Government Plaintiff
- ☒ 2 U.S. Government Defendant
- 3 Federal Question (U.S. Government Not a Party)
- 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

### IV.  CASE ASSIGNMENT AND NATURE OF SUIT
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

**O A.** *Antitrust*
- ☐ 410 Antitrust

**O B.** *Personal Injury/ Malpractice*
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**O C.** *Administrative Agency Review*
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☒ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**O D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### O E.  General Civil (Other)   OR   O F.  Pro Se General Civil

**Real Property**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**Personal Property**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**Bankruptcy**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**Property Rights**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**Federal Tax Suits**
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**Other Statutes**
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○  G. *Habeas Corpus/ 2255* | ○  H. *Employment Discrimination* | ○  I. *FOIA/PRIVACY ACT* | ○  J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○  K. *Labor/ERISA (non-employment)* | ○  L. *Other Civil Rights (non-employment)* | ○  M. *Contract* | ○  N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**
◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
APA claims arising from violations of the National Environmental Policy Act and other federal law.    5 USC 701

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ _____   Check YES only if demanded in complaint   JURY DEMAND:  YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐  NO ☒   If yes, please complete related case form.

DATE February 25, 2008   SIGNATURE OF ATTORNEY OF RECORD _[signature]_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.