**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BOARD OF COMMISSIONERS OF CHEROKEE COUNTY, KANSAS, )<br><br>Plaintiff, )<br><br>v. )<br><br>KEMPTHORNE, et al., )<br><br>Defendants. ) | Case No. 1:08-cv-00317-RWR<br>Judge Richard W. Roberts |

<u>**THE UNITED STATES' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**</u>

**INTRODUCTION**

Defendants, Dirk Kempthorne in his official capacity as Secretary of the Interior ("Secretary") and the United States Department of the Interior ("Interior") (hereinafter collectively referred to as the "Defendants"), hereby oppose the Motion for Preliminary Injunction ("Motion") filed February 25, 2008 (Docket #2) by the Board of Commissioners of Cherokee County, Kansas ("Plaintiff"). Plaintiff claims it is entitled to an injunction because the Defendants violated the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701-2721, and the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370f, by transferring a portion of the Meh-No-Bah Allotment into trust on behalf of the Quapaw Tribe of Oklahoma ("Quapaw Tribe") thereby allowing the construction of a casino resort without the proper environmental review. Mot. at 1. The Motion requests that the Court enjoin the Secretary from proceeding on any further land transfers on behalf of the Quapaw Tribe related to the

development of the casino, and that the Secretary and those acting in concert with him be enjoined from conducting any further construction activity on the property and from operating the casino.  Mot. at 2.

Plaintiff's Motion must be denied because the injunctive relief it seeks is unavailable. Plaintiff seeks to enjoin Defendants from engaging in the construction and operation of a casino, something Defendants are simply not doing.[1]  Defendants are not engaging in any ongoing construction or development activity on the Meh-No-Bah Allotment; the Quapaw Tribe is the entity doing so.  However, the Quapaw Tribe is not before this Court, and therefore, the Court lacks jurisdiction to enjoin the Tribe.  Defendants also have no authority to regulate the construction activities of the Tribe and, even if the United States had such authority and chose to use it, construction of a casino is not unlawful.

Moreover, Plaintiff cannot show the requisite likelihood of success on the merits of either of its two statutory claims.  Any claims under IGRA are premature because no gaming has taken place on the property.  In addition, under the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a,  the Court has no jurisdiction to hear claims seeking to divest the United States of title to the land it holds in trust or restricted fee for the Quapaw Tribe, which is the relief Plaintiff ultimately seeks. Compl. at 13.  With respect to NEPA, any claim that the United States did not properly comply with NEPA is necessarily tied to the major federal action that triggers NEPA, the transfer of the

---

[1]Plaintiff also seeks to enjoin the United States from "proceeding with any further land acquisitions related to the development" of a gaming facility on the property.  Mot. at 2.  The Quapaw Tribe currently has one application pending to have land taken into trust under the Indian Land Consolidation Act ("ILCA"), 25 U.S.C. §§ 2201-2221, § 2204.  The Secretary of the Interior has agreed not to take any additional land into trust on behalf of the Quapaw Tribe during the pendency of the present litigation. Ex. 3, Decl. of Majel Russell.  Therefore, injunctive relief is unnecessary.

land into trust or restricted fee.  Since the land transfer process is complete, Plaintiff's NEPA

claims are moot.  Therefore, Plaintiff also fails to show a likelihood of success on the merits of

its claims.  For these reasons and the other reasons set forth below, Plaintiff's Motion should be

denied.

### BACKGROUND

Plaintiff's Motion centers around the construction and development of a casino/hotel

complex by the Quapaw Tribe in the northeastern corner of Oklahoma, where the State borders

Kansas and Missouri.  Mem. in Supp. of Mot. at 3.  The project consists of the construction of

the casino/hotel complex, infrastructure, and amenities on 85 acres of land in Oklahoma, surface

vehicle parking and a driveway on approximately 63 acres in Kansas, and an extension of the

driveway on approximately 30 acres in Missouri.[2]  Ex. 1 at ¶ 2 (Exhibit 1(C) attached to

Plaintiff's Memorandum).  The land on which the gaming establishment will be located is, in its

entirety, a parcel of land in Oklahoma known as the Meh-No-Bah Allotment.  Id. at ¶ 3.  The

Quapaw Tribe acquired 5/6ths of the Meh-No-Bah Allotment in trust from its individual Indian

landowners through the Indian Land Consolidation Act ("ILCA"), 25 U.S.C. §§ 2201-2221; the

remaining 1/6th of the land, also acquired by the Tribe pursuant to ILCA, is held by the Tribe in

restricted fee.[3]  Id.  The Meh-No-

---

[2]All 63 acres in Kansas, where Plaintiff is located, are owned by the Tribe in fee simple.  As such, that parcel is subject to the State of Kansas' jurisdiction.

[3]Notably, the individual parcels making up the Meh-No-Bah Allotment were allotted to members of the Quapaw Tribe pursuant to an Act of the Quapaw National Council approved on March 23, 1893, and ratified and confirmed by the Act of March 2, 1895, 28 Stat. 876, 907.  "'Indian Country'. . . means . . . (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same."  18 U.S.C. § 1151(c).  Although Congress enacted Section 1151 as a guide to federal criminal jurisdiction, the Supreme

Bah Allotment was acquired pursuant to five separate transactions.  Exs. 2-6 (Exhibits .  The first two parcels each had a 1/4 undivided interest in the Allotment –  for a total of a 1/2 undivided interest – and were transferred from their individual Indian onwers into trust for the Tribe on April 27, 2007.  Exs. 2, 3.  Two additional parcels were transferred from their individual Indian owners into trust on May 18, 2007 and July 6, 2007, respectively, each with a 1/6 undivided interest in the Meh-No-Bah Allotment, for a total of a 5/6 undivided interest in the Meh-No-Bah Allotment.  Exs. 4, 5.  The final transaction, on July 10, 2007, involved the transfer of the parcel with a 1/6 undivided interest in the Meh-No-Bah Allotment in restricted fee Indian land.[4/]  Ex. 6.

## STANDARD OF REVIEW

Courts addressing a motion for a preliminary injunction should examine four factors: (1) whether there is a substantial likelihood that the plaintiff will prevail on the merits; (2) whether the plaintiff will be irreparably injured if an injunction is not granted; (3) whether an injunction will substantially injure the other party; and (4) whether granting the injunction would further the public interest.  Serono Labs., Inc. v. Shalala, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998) (citing Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977)).

---

Court has applied this definition to questions of federal civil jurisdiction and tribal jurisdiction.  California v. Cabazon Band of Mission Indians, 480 U.S. 202, 208 (1987); DeCoteau v. Dist. County Court for Tenth Judicial Dist., 420 U.S. 425, 427 n.2 (1975).  Therefore, although the Quapaw Tribe acquired possession of the allotments pursuant to ILCA in 2007, the individual parcels have always been Indian land and Indian Country.

[4/]The title of restricted fee land is held by the Indian tribe with specific federally-imposed restrictions on its use and/or disposition.  As the Supreme Court noted in Oklahoma Tax Commission v. United States, "[t]he power of Congress over 'trust' and 'restricted' lands is the same and in practice the terms have been used interchangeably."  Okla. Tax Comm'n v. United States, 319 U.S. 598, 618-19 (1943) (citation omitted).

These factors are interrelated and must be balanced against each other.  Id.

**ARGUMENT**

Plaintiff fails to make a sufficient showing on any of the elements required to justify a preliminary injunction, and its motion should be denied.

**A.      Plaintiff cannot show a substantial likelihood of success on the merits.**

**1.      The United States is not the proper party to enjoin.**

Plaintiff seeks to enjoin the Secretary, "and all those acting in concert with him," from performing any further construction on the property and from operating the casino "until the Secretary has complied with . . . NEPA."  Mot. at 2.  The Defendants are not engaging in any construction on the property; the Quapaw Tribe is doing so.  Therefore, if the Court were going to enjoin construction activities on the Meh-No-Bah Allotment, it would have to enjoin the Quapaw Tribe, not the United States.  However, the Quapaw Tribe is not a party to this case and cannot be joined by the Plaintiff because it has sovereign immunity from suit.  Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla., 498 U.S. 505, 509 (1991) ("Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories.  Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation.") (citations omitted).

Although the United States does hold the Meh-No-Bah Allotment in trust and restricted fee for the Quapaw Tribe, the Tribe is a domestic dependent nation with inherent sovereign authority of its members and territories.  As such, once the Meh-No-Bah Allotment was transferred in trust and restricted fee, the United States has no role in regulating construction activities on it, unless Congress establishes such a regulatory role.  Plaintiff fails to identify

5

legislation providing the United States with such a regulatory role.  The United States only has a role in transferring the land, pursuant to ILCA, and in regulating the gaming operation through IGRA.  At this point, no gaming is being conducted and there is no federal law which provides the United States with the authority to regulate a Tribe's ability to engage in construction on its land.

Moreover, the construction is not illegal and the United States has no authority to stop the Quapaw Tribe, a quasi-sovereign entity, from engaging in lawful activity on its land.  The fact that the United States has set aside the Meh-No-Bah Allotment as trust and restricted fee Indian lands on behalf of the Quapaw Tribe does not endow the United States with the authority to halt the lawful activities of the Tribe on that land.[5]  "In addition to broad authority over intramural matters such as membership, tribes retain sovereign authority to regulate economic activity within their own territory."  Nat'l Labor Relations Bd. v. Pueblo of San Juan, 276 F.3d 1186, 1192-93 (10th Cir. 2002) (citing Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 137 (1982); Washington v. Confederated Tribes of Colville Indian Reservation, 447 U.S. 134, 152-53 (1980)).

**2.    The QTA bars Plaintiff's NEPA claims.**

Plaintiff also cannot show a substantial likelihood of prevailing on the merits of its claims that the Secretary violated NEPA when acquiring the Meh-No-Bah Allotment.  Plaintiff challenges the Secretary's decisions regarding the acquisition of the Meh-No-Bah Allotment,

_____

[5]As stated earlier, the portion of the Tribe's property that lies in Cherokee County, Kansas, where Plaintiff is located – the site of the proposed parking lot – is owned by the Tribe in fee simple, so the United States lacks any connection to that portion of the land.  The State of Kansas regulates that portion.

claiming that the Secretary violated NEPA in the acquisition process.  Compl. ¶¶ 1, 17, 22, 23, 38, 43; Mem. in Supp. of Mot. at 21-26, 28-34.  Plaintiff is attempting to invalidate these land acquisition transactions by asserting that the Secretary failed to comply with NEPA.  Compl. at 11-13.

If Plaintiff were to prevail, the remedy in effect would nullify the Secretary's decision to acquire the allotment in trust or restricted fee for the Tribe.  However, the QTA prohibits suits challenging the United States' title in trust or restricted fee Indian lands.  See Neighbors for Rational Dev., Inc. v. Norton, 379 F.3d 956, 961-62 (10th Cir. 2004) (citing United States v. Mottaz, 476 U.S. 834, 843 (1986)).  The QTA waives the United States' sovereign immunity for suits to adjudicate disputed title to lands, but explicitly states that the waiver does not apply to trust or restricted Indian lands.  28 U.S.C. § 2409a(a).  For a suit to be prohibited under the QTA, a plaintiff need not explicitly characterize its action as one seeking to quiet title in Indian lands; rather, the relevant factor is the nature of relief sought.  See Neighbors, 379 F.3d at 961-62 (action seeking declaratory judgment that trust acquisition of Indian lands was null and void barred by the QTA).[6/]  Therefore, Plaintiff's characterization of its suit as one challenging, pursuant to the APA, alleged violations of NEPA is immaterial, as is the fact that Plaintiff does not claim any adverse ownership interest in the property.  It is the impact of the relief sought that dictates the applicability of the QTA.  See Neighbors, 379 F.3d at 961-62; Metro. Water Dist. of S. Cal. v. United States, 830 F.2d 139, 143 (9th Cir. 1987) ("Although MWD may not be seeking

---

[6/]A plaintiff cannot avoid the impact of the Quiet Title Act by characterizing his claim as falling under the Administrative Procedure Act, 5 U.S.C. §§ 701-706.  Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands, 461 U.S. 273, 286 n.22 (1983); see also Alaska v. Babbitt, 182 F.3d 672, 674 (9th Cir. 1999); Ducheneaux v. Sec'y of Interior, 837 F.2d 340, 342 (8th Cir. 1988); Florida v. U.S. Dep't of Interior, 768 F.2d 1248, 1254-55 (11th Cir. 1985).

to quiet title to the land in itself, it seeks a determination of the boundaries of the Reservation.

The effect of a successful challenge would be to quiet title in others than the Tribe.").

The Eleventh Circuit has considered precisely this question and held that the QTA

forecloses judicial review of the Secretary's decision to take land into trust for Indians once that

land is in trust.  See Florida v. U.S. Dep't of Interior, 768 F.2d 1248, 1248-55 (11th Cir. 1985).

In Florida, the State filed a suit under the APA challenging the Secretary's decision to take land

into trust for the Seminole Tribe.  Id. at 1250.  The State argued that the QTA did not bar its suit

because the suit was not a quiet title action:  the State did not seek to quiet title to the land at

issue, nor did it assert any property interest in the land.  The Eleventh Circuit rejected the

argument and held that the QTA barred the State's claim:

> Although technically the suit in the instant case is not one to quiet
> title, we conclude that Congress' decision to exempt Indian lands
> from the waiver of sovereign immunity impliedly forbids the relief
> sought here. . . . Here, the appellants seek an order divesting the
> United States of its title to land held for the benefit of an Indian
> tribe. . . . Congress chose to preclude an adverse claimant from
> divesting the United States' title to Indian lands held in trust.  It
> would be anomalous to allow others, whose interest might be less
> than that of an adverse claimant, to divest the sovereign of title to
> Indian trust lands.  Hence we conclude that the APA waiver of
> immunity is inapplicable in this instance.

Id. at 1254; see also Shawnee Trail Conservancy v. U.S. Dep't of Agric., 222 F.3d 383, 386-88

(7th Cir. 2000) (holding that the QTA barred the plaintiffs from bringing an APA challenge to

the Forest Service's decision to close certain lands covered by the alleged easements, even

though the plaintiffs sought only to challenge the closure of the lands and did not seek to quiet

title to the lands), cert. denied, 531 U.S. 1074 (2001); Shivwits Band of Paiute Indians v. Utah,

185 F. Supp. 2d 1245, 1249-52 (D. Utah 2002) (holding that the QTA prohibited the plaintiffs

8

from challenging a trust acquisition), aff'd, 428 F.3d 966 (10th Cir. 2005).

Plaintiff cannot circumvent the terms of the QTA by crafting its allegations as APA claims asserting a violation of administrative procedure, NEPA, or any other statute. Therefore, Plaintiff's attempt to invalidate these land transfers by claiming that the Secretary failed to comply with NEPA is barred by the QTA.

### 3.    Plaintiff's NEPA claims are moot.

Plaintiff also cannot show a substantial likelihood of success on the merits with respect to its claim that the Secretary violated NEPA. Compl. ¶¶ 1, 17, 22, 23, 38, 43; Mem. in Supp. of Mot. at 21-25, 28-34. With regard to any NEPA analysis that was performed before the lands were transferred to the Tribe, Plaintiff's NEPA claims are moot because the federal actions that triggered NEPA compliance, the transactions through which the Meh-No-Bah Allotment was acquired, have already been completed. "A claim that the defendants violated the NEPA is moot when the action complained of has been completed and no effective relief is available." Karst Envtl. Educ. & Prot., Inc. v. U.S. Envtl. Prot. Agency, 403 F. Supp. 2d 74, 82 (D.D.C. 2005) (citing Fund for Animals v. U.S. Bureau of Land Mgmt., 357 F. Supp. 2d 225, 230 (D.D.C. 2004)), aff'd, 475 F.3d 1291 (D.C. Cir. 2007). Here, the actions complained of – the transfer of the Meh-No-Bah Allotment – have been completed and cannot be reversed. For the same reason, no meaningful relief is available to Plaintiff:

> [A]ny claim seeking to re-examine issues unique to the trust acquisition is moot because the court is without authority to provide any relief. "When events occur that prevent the . . . court from granting any effective relief, an issue is moot." Casad v. United States Dep't of Health & Human Servcs., 301 F.3d 1247, 1254 (10th Cir. 2002). Assuming for the sake of argument the district court considered the merits of [Plaintiff's] various claims

and concluded the Secretary had not complied with the National
Environmental Policy Act or the trust acquisition regulations, the
district court could theoretically order the Secretary to now
consider the appropriate factors. The district court, however, has no
power to divest the United States of the property and [Plaintiff]
does not allege the Secretary has power to reconsider its decision.
Requiring the Secretary to re-examine its trust acquisition decision
would not provide [Plaintiff] with any meaningful relief and would
be a waste of agency resources – not to mention the judicial
resources that would be consumed in evaluating the sufficiency of
the Secretary's initial considerations. Since the Secretary has
acquired title to the property, the issue is moot.

Neighbors, 379 F.3d at 965.  Plaintiff's contention that it would receive some kind of meaningful

relief if the Secretary were required to revisit the decision to transfer the undivided interests in

the Meh-No-Bah Allotment to the Tribe is false.

    **4.    Plaintiff's IGRA claims are not ripe for review.**

    Plaintiff also characterizes the transfer of undivided interests as violating IGRA.  Mem. in

Supp. of Mot. at 18-21.  IGRA has nothing to do with land acquisition or transfer.  Indeed, the

Secretary has no authority to acquire or transfer land pursuant to IGRA.  Therefore, at the time

the Meh-No-Bah Allotment was transferred to the Quapaw Tribe, no IGRA review was necessary

because land acquisition and transfer does not implicate IGRA.

    Furthermore, there has been and is no violation of IGRA because gaming is not occurring

on the property.  IGRA prescribes rules governing the operation of gaming by Indian tribes.  See

Citizens Exposing Truth About Casinos v. Kempthorne, 492 F.3d 460, 462 (D.C. Cir. 2007);

City of Roseville v. Norton, 348 F.3d 1020, 1024 (D.C. Cir. 2003).  Together with 18 U.S.C. §

1166, IGRA creates a scheme of civil and criminal actions that may be used to prevent and

punish Indian gaming that does not conform to IGRA's prescriptions.  See United States v. Santa

<u>Ynez Band of Chumash Mission Indians</u>, 983 F. Supp. 1317, 1320 (C.D. Cal. 1997).  When no gaming has taken place, however, there can be no violation.  The act of transferring land pursuant to ILCA does not violate IGRA and the mere construction of a casino building or facility does not violate IGRA.

For these reasons, Plaintiff's contention that the Secretary has violated IGRA by transferring the undivided interests in the Meh-No-Bah Allotment is misdirected and any IGRA claims are unripe for review. Accordingly, Plaintiff has not shown a substantial likelihood of prevailing on its claim of an IGRA violation by the Secretary.

### 5.    <u>The Section 151 regulations are irrelevant.</u>

The land acquisition provision of the Indian Reorganization Act, 25 U.S.C. § 465, and its regulations, 25 C.F.R. Part 151, are irrelevant.  All of the parcels of land were acquired pursuant to ILCA, not the IRA.  As such, the IRA and its regulations do not apply.

Plaintiff's first argument is that a statute must contain an exemption from the IRA and its regulations.  Mem. in Supp. of Mot. at 26.  There is simply no legal support for the argument that the IRA applies to all acquisitions unless the statute contains an exemption.  There are numerous statutes that provide the Secretary with the ability to acquire land into trust or restricted fee; the IRA is simply one of those statutes, but it is not the only statute.  For example, there are specific settlement acts that provide distinct authority for the Secretary to acquire land.  <u>See, e.g.</u> Pokagon Restoration Act, 25 U.S.C. § 1300j-5.  In this instance, ILCA provides the Secretary with the specific authority to transfer existing Indian lands into trust or restricted fee.

Plaintiff next argues that Section 2202 of ILCA requires the application of the IRA and its regulations to land transfers.  The purpose of Section 2202 is to amend the IRA, 25 U.S.C. § 465,

to extend its provisions to all tribes, regardless of whether those tribes were organized under the IRA.  See H.R. Rep. 97-908, 1982 U.S.C.C.A.N. 4415, 4416 (1982).  Prior to this amendment, it was unclear whether tribes that chose not to organize under the IRA could use the IRA's land acquisition authority.  In passing ILCA, Congress amended the IRA to clarify this issue.  Furthermore, Congress also provided that nothing in Section 2202 supercedes or amends any specific acts regarding the acquisition of land for Indians in any specific tribe, reservation or state.  Id.

Plaintiff's simply misapprehend the IRA and its application.  The IRA does not apply to trust-to-trust or restricted fee-to-trust land transfers under ILCA and, therefore, the IRA and its regulations are irrelevant.

**B.    Plaintiff is not entitled to injunctive relief because it has failed to show sufficient harm.**

Plaintiff improperly seeks extraordinary relief from this Court without demonstrating that it will suffer irreparable harm absent an injunction.  Contrary to the requirement that a plaintiff show that it will suffer an injury that is "both certain and great" and "of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm," Wisc. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985), Plaintiff suggests only irrelevant harms stemming from lawful activity and speculative harms that might result from the denial of the requested relief.  For example, Plaintiff complains that the Tribe is using a County road "to bring heavy equipment and materials onto the construction site."  Mem. in Supp. of Mot. at 36.  As described above, however, the construction activity occurring on the property is entirely lawful, and Plaintiff cannot claim any legitimate injury stemming from the Tribe's lawful activity.  All of the

other injuries Plaintiff cites involve traffic-related maintenance and public safety costs that would not occur unless and until the casino becomes operational. The physical construction of the casino resort may be largely complete, but IGRA imposes a variety of regulations and requirements that must be complied with before Indian gaming may occur, see, e.g., 25 U.S.C. §§ 2710, 2719, and the facility is by no means ready to open its doors. The harms Plaintiff identifies from allowing the Tribe's lawful construction activities to continue are not sufficiently great, imminent, or irreparable to warrant the extreme remedy of an injunction.

Moreover, Plaintiff has delayed bringing this action until the resort is near completion. Delay by a plaintiff in seeking injunctive relief is probative of a lack of irreparable hardship to the plaintiff. In Lydo Enterprises, Inc. v. City of Las Vegas, 745 F.2d 1211, 1213-14 (9th Cir. 1984), the Court held that a delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief. The court quoted from Gillette Company v. Ed Pinaud, Inc., 178 F. Supp. 618, 622 (S.D.N.Y. 1959), stating that "[a] preliminary injunction is sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights. By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action." Lydo Enterprises, 745 F.2d at 1213-14. In Oakland Tribune, Inc. v. Chronicle Publishing Company, 762 F.2d 1374 (9th Cir. 1985), the court again noted that a delay in seeking a preliminary injunction "implies a lack of urgency, and irreparable harm." Id. at 1377; see also Quince Orchard Valley Citizens Ass'n v. Hodel, 872 F.2d 75, 80 (4th Cir. 1989) (delay in seeking injunction indicates absence of irreparable harm and is a relevant factor to include in balance); Citibank, N.A. v. Citytrust, 756 F.2d 273, 276 (2d Cir. 1985) (plaintiff's delay in seeking relief indicates "reduced need for such drastic, speedy action" as an injunction); Scott-Blanton v.

13

Universal City Studios Prods. LLLP, 495 F. Supp. 2d 74, 80 (D.D.C. 2007) (delay in bringing motion for injunction weighs against finding of irreparable harm).  Here, Plaintiff had inquiry notice of the construction activity and of the Quapaw Tribe's anticipated use of the facility, but waited until construction was largely complete to bring this lawsuit.

**C.**    **An injunction would harm the United States and does not serve the public interest.**

Because the United States has no statutory authority to regulate or halt lawful construction activity engaged in by the Tribe, granting the injunction sought by Plaintiff would place the United States in the untenable position of being held responsible for stopping lawful activity over which it has no authority.[7]  As a result, to order an injunction would harm both the United States and the public interest.  Accordingly, the third and fourth factors that a court should consider when addressing a motion for a preliminary injunction mitigate in favor of denying Plaintiff's motion.

## CONCLUSION

For the foregoing reasons, and particularly due to Plaintiff's failure to meet its burden to show likelihood of success on the merits, the Court should deny Plaintiff's request for the extraordinary relief of a preliminary injunction.

Dated: March 3, 2008                    Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

/s/

---

[7]Furthermore, an injunction would cause financial harm to the Tribe, which has invested millions of dollars in building a facility that is now approximately 80 percent complete.

GINA L. ALLERY
D.C. Bar No. 485903

AMY S. TRYON
Attorneys
United States Department of Justice
Environment and Natural Resources Division
Indian Resources Section
P.O. Box 44378
L'Enfant Plaza Station
Washington, D.C.  20026-4378
(202) 305-0261

OF COUNSEL:
MARIA WISEMAN
United States Department of the Interior
Office of the Solicitor
Washington, D.C.

15

Exhibit 1



# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, DC  20240



DEC **2 0** 2007

The Honorable Pat Roberts
United States Senate
Washington, D.C. 200510

Dear Senator Roberts:

Thank you for your letter of October 24, 2007, requesting our review of an October 18, 2007, letter from the Board of County Commissioners of Cherokee County, Kansas (Board). In that letter, the Board asks several questions regarding the proposed Downstream Casino and Hotel to be operated by the Quapaw Indian Tribe of Oklahoma (Tribe).

The proposed project will consist of a casino/hotel complex, infrastructure and other amenities on approximately 85 acres in Oklahoma, surface vehicle parking and an access driveway on approximately 63 acres in Kansas, and an extension of the access driveway on approximately 30 acres in Missouri.

The Board's first question is whether the land on which the gaming establishment will be located has been taken into trust for the Tribe. The gaming establishment will be located on the Meh-No-Bah allotment. The land has been acquired in trust through the Indian Land Consolidation Act (ILCA), except for an undivided 1/6 interest which is the subject of a trust application pending before the Eastern Oklahoma Regional Director of the Bureau of Indian Affairs (BIA) under 25 CFR Part 151.

The Board's second question relates to the application of the Indian Gaming Regulatory Act (IGRA) to the parcel on which the gaming establishment will be located, along with whether IGRA also impacts the non-gaming parcels in Kansas and Missouri. The BIA has informed the National Indian Gaming Commission (NIGC) that the gaming establishment will be located within the former reservation of the Quapaw Tribe in Oklahoma (copy enclosed). We are not aware of an NIGC opinion on whether the gaming parcel in Oklahoma qualifies as "Indian lands" under IGRA. It is our position that IGRA does not require the proposed parking lot in Kansas to be taken into trust as no gaming activities will be conducted thereon.

The Board's third question relates to compliance with the requirements of the National Environmental Policy Act (NEPA). The BIA did not complete either an environmental assessment (EA) or an environmental impact statement (EIS) for this project because it determined that one is not required for the ILCA acquisitions. However, the BIA will comply with NEPA requirements for the pending acquisition of the 1/6 interest in the Meh-No-Bah allotment.

The Board's last question is whether the Tribe has entered into a management contract for this casino. Our understanding is that the Tribe intends to manage the gaming establishment itself rather than retain a management company.

We hope that this letter addresses the Board's concerns. Thank you for your interest in this important issue.

Sincerely,

Carl J. Artman
Assistant Secretary – Indian Affairs

Enclosure

Exhibit 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BOARD OF COMMISSIONERS OF CHEROKEE ) <br> COUNTY, KANSAS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KEMPTHORNE, et al., ) <br> ) <br> Defendants. ) <br> ————————————————————) | Case No. 1:08-cv-00317-RWR <br> Judge Richard W. Roberts |

**<u>Declaration of Gina L. Allery</u>**

I, Gina L. Allery, declare as follows:

1.    I am a trial attorney with the Unites States Department of Justice, Environmental and Natural Resources Division/Indian Resources Section. I am licensed to practice law in the District of Columbia.

2.    Attached hereto as Exhibits 2(A)-(E) are true and correct copies of the deeds for the transfer of land from the Individual Indian landowners of the Meh-No-Bah Allotment to the Quapaw Indian Tribe.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief. Executed this 3rd day of March 2008.

_____
GINA L. ALLERY
D.C. Bar No. 485903

1

Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
Indian Resources Section
P.O. Box 44378
L'Enfant Plaza Station
Washington, D.C.  20026-4378
(202) 305-0261

2

Exhibit 2(A)

5-5448
modified
May 2005
ILCP

Allottee: See Exhibit 'A'
Tract No: See Exhibit 'A'
Tran. No. 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-07

**UNITED STATES**
**DEPARTMENT OF THE INTERIOR**
**BUREAU OF INDIAN AFFAIRS**

### DEED TO RESTRICTED INDIAN LAND

THIS INDENTURE, Made and entered into this ___27___ day of ___April___, 2007, by and between:

Yannah F. Stephenson ID # 920U002967, heir of allottee, a married woman dealing with her own separate property on which she does not reside, residing at Broken Arrow, Oklahoma, party of the first part,

And the _____ USA in Trust for the Quapaw Tribe of Indians of Oklahoma_____ party of the second part:

WITNESSETH, That said party of the first part, for consideration of nine-thousand five-hundred dollars and no/100 ($9,500.00).

In hand paid, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell, and convey unto said party of the second part the following described real estate and premises situated on lands located within the Quapaw Tribe of Oklahoma's jurisdictional boundary, to-wit:

> See attached Exhibit 'A' for undivided interests,
> Legal descriptions and considerations
> All located within the Indian Meridian.

This conveyance is made pursuant to the provisions of the Indian Land Consolidation Act Amendments of 2000, Public Law 106-462 (114 Stat., 1992), as amended by the American Indian Probate Reform Act of 2004, Public Law 108-374 (118 Stat., 1773). All revenue from said land interest(s) is encumbered by the United States of America until the purchase price has been repaid or the encumbrance is released by the Secretary.

Together with all improvements thereon and the appurtenances thereunto belonging.

And the said party of the first part, for herself and her heirs, executors, and administrators, does hereby covenant, promise, and agree to and with the said party of the second part, its successors and assigns, that she will forever warrant and defend the said premises against the claims of all persons, claiming or to claim by, through, or under herself only.

To have and to hold said described premises unto the said party of the second part, its successors, executors, administrators, and assigns, forever.

IN WITNESSES WHEREOF, That said party of the first part has set her hand and seal the day and year first above written.

WITNESSES:

_____

_____        _____ [SEAL]
                                 Yannah F. Stephenson

_____        _____ [SEAL]

_____        _____ [SEAL]

_____        _____ [SEAL]

FILED

MAY 03 2007
07 0400011
DOCUMENT NO._____
EASTERN OKLAHOMA

Acknowledgements must be in accordance with the forms presented by the State in which the land is situated.

STATE OF _____Oklahoma_____ )
                                    ) ss.
COUNTY OF __Ottawa__ )

BE IT REMEMBERED, That on this __27th__ day of __April__, A.D. _2007_ before the undersigned, a __Notary Public__ in and for the County and State aforesaid, personally appeared ____Yannah F. Stephenson____ to me personally known to be the identical person who executed the within instrument of writing, and such person duly acknowledge the execution of the same.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my seal on the day and year last hereinabove written.

                                        _Penny Sexton_____
                                        ____Notary Public____
                                             (title)

My Commission expires: __9-2-09__
My Commission number: __010136/7__

                UNITED STATES
        DEPARTMENT OF THE INTERIOR
            Bureau of Indian Affairs
                Miami Agency
            Miami, Oklahoma 74055

The within deed is hereby approved:  Pursuant with authority delegated by 209 DM 8, 230 DM 1,3 IAM 4.1, and the Muskogee Area Addendum 9901 2 3IAM 4 issued 6/24/1999.

Approval Date: _4/27/2007_         Actg.  _Mary Moss_
                                         Superintendent



FILED

MAY 0 3 2007
07 0400011
DOCUMENT NO.____
EASTERN OKLAHOMA
TITLE SERVICES OFFICE

Exhibit A

Land Interests Owned by Yannah F. Stephenson ID # 920U002967, located within the jurisdictional boundary of the Quapaw Tribe of Indian of Oklahoma

Date Printec April 26, 2007

Page 1

| Tract Number | Legal Description | Undivided Interest | Consideration |
|---|---|---|---|
| 920 B 194 Mehnobah | SE 1/4 of NW 1/4, Section 17, Township 29 North, Range 25 East, Ottawa County, containing 40 acres, more or less. | 1/4 | $ 9,500.00 |

FILED

MAY 08 2007
DOCUMENT NO.
07-0400011
EASTERN OKLAHOMA
TITLE SERVICES OFFICE

Exhibit 2(B)

5-5446
modified
May 2005
II.CP

Allottee: See Exhibit 'A'
Tract No: See Exhibit 'A'
Tran. No. 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-07

**UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS**

---

### DEED TO RESTRICTED INDIAN LAND

THIS INDENTURE, Made and entered into this __27th__ day of __April__, 2007, by and between:

George R. McWatters Jr. ID # 920U002968, heir of allottee, a married man dealing with his own separate property on which he does not reside, residing at Quapaw, Oklahoma, party of the first part,

And the _____ USA in Trust for the Quapaw Tribe of Indians of Oklahoma _____ party of the second part:

WITNESSETH, That said party of the first part, for consideration of nine-thousand five-hundred dollars and no/100 ($9,500.00).

In hand paid, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell, and convey unto said party of the second part the following described real estate and premises situated on lands located within the Quapaw Tribe of Oklahoma's jurisdictional boundary, to-wit:

> See attached Exhibit 'A' for undivided interests,
> Legal descriptions and considerations
> All located within the Indian Meridian.

This conveyance is made pursuant to the provisions of the Indian Land Consolidation Act Amendments of 2000, Public Law 106-462 (114 Stat., 1992), as amended by the American Indian Probate Reform Act of 2004, Public Law 108-374 (118 Stat., 1773). All revenue from said land interest(s) is encumbered by the United States of America until the purchase price has been repaid or the encumbrance is released by the Secretary.

Together with all improvements thereon and the appurtenances thereunto belonging.

And the said party of the first part, for himself and his heirs, executors, and administrators, does hereby covenant, promise, and agree to and with the said party of the second part, its successors and assigns, that he will forever warrant and defend the said premises against the claims of all persons, claiming or to claim by, through, or under himself only.

To have and to hold said described premises unto the said party of the second part, its successors, executors, administrators, and assigns, forever.

IN WITNESSES WHEREOF, That said party of the first part has set his hand and seal the day and year first above written.

WITNESSES:

_____    _George R. McWatters Jr._ [SEAL]
                                     George R. McWatters Jr.

_____    _____ [SEAL]

_____    _____ [SEAL]

_____    _____ [SEAL]

**FILED**

MAY 0 3 2007
07  0400010
DOCUMENT NO.
EASTERN OKLAHOMA
TITLE SERVICES OFFICE

NO. 859    P. 2                                    BIA RES    JUL. 6. 2007 11:35AM

Acknowledgements must be in accordance with the forms presented by the State in which the land is situated.

STATE OF _Oklahoma_ )
                     ) ss.
COUNTY OF _Ottawa_   )

BE IT REMEMBERED, That on this __27th__ day of __April__, A.D. __2007__ before the undersigned, a __Notary Public__ in and for the County and State aforesaid, personally appeared __George R. McWatters Jr.__ to me personally known to be the identical person who executed the within instrument of writing, and such person duly acknowledge the execution of the same.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my seal on the day and year last hereinabove written.

_Penny Sexton_

Notary Public
(title)

My Commission expires: __9-2-09__
My Commission number: __01013617__

**UNITED STATES
DEPARTMENT OF THE INTERIOR**
Bureau of Indian Affairs
Miami Agency
Miami, Oklahoma 74055

The within deed is hereby approved:  Pursuant with authority delegated by 209 DM 8, 230 DM 1,3 IAM 4.1, and the Muskogee Area Addendum 9901 2 3IAM 4 issued 6/24/1999.

Approval Date: __4/27/2007__

Acting Superintendent, _Mary Thass_

FILED
MAY 0 3 2007
07 0400010
DOCUMENT NO.
EASTERN OKLAHOMA
TITLE SERVICE OFFICE

Exhibit A

Land Interests Owned by George R. McWatters Jr. ID # 920U002968, located within the jurisdictional boundary of the Quapaw Tribe of Indian of Oklahoma

Date Printed April 26, 2007

Page 1

| Tract Number | Legal Description | Undivided Interest | Consideration |
|---|---|---|---|
| 920 B 194 Mehnobah | SE 1/4 of NW 1/4, Section 17, Township 29 North, Range 25 East, Ottawa County, containing 40 acres, more or less. | 1/4 | $ 9,500.00 |



FILED

MAY 08 2007

EASTERN OKLAHOMA
TITLE SERVICES OFFICE

DOCUMENT NO.
07 0440010

Exhibit 2(C)

Case 1:08-cv-00317-RWR    Document 10-3    Filed 03/03/2008    Page 13 of 21

JUL-19-2007 THU 11:40 AM BIA/MIAMI AGENCY    FAX NO. 918542720?

5-5440
modified
May 2005
ILCP

Allottee: See Exhibit 'A'
Tract No: See Exhibit 'A'
Tran. No. 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-07

**UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS**

### DEED TO RESTRICTED INDIAN LAND

THIS INDENTURE, Made and entered into this _18th_ day of _May_, 2007, by and between:

Jan Colbert Killough, ID # 808U016020, heir of allottee, a single man dealing with his own separate property on which he does not reside, residing at Bluejacket, Oklahoma, party of the first part,

And the _____ USA in Trust for the Quapaw Tribe of Indians of Oklahoma _____ party of the second part;

WITNESSETH, That said party of the first part, for consideration of six-thousand three-hundred thirty-three dollars and 33/100 ($6,333.33).

In hand paid, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell, and convey unto said party of the second part the following described real estate and premises situated on lands located within the Quapaw Tribe of Oklahoma's jurisdictional boundary, to-wit:

See attached Exhibit 'A' for undivided interests,
Legal descriptions and considerations
All located within the Indian Meridian.

This conveyance is made pursuant to the provisions of the Indian Land Consolidation Act Amendments of 2000, Public Law 106-462 (114 Stat., 1992), as amended by the American Indian Probate Reform Act of 2004, Public Law 108-374 (118 Stat., 1773). All revenue from said land interest(s) is encumbered by the United States of America until the purchase price has been repaid or the encumbrance is released by the Secretary.

Together with all improvements thereon and the appurtenances thereunto belonging.

And the said party of the first part, for himself and his heirs, executors, and administrators, does hereby covenant, promise, and agree to and with the said party of the second part, its successors and assigns, that he will forever warrant and defend the said premises against the claims of all persons, claiming or to claim by, through, or under himself only.

To have and to hold said described premises unto the said party of the second part, its successors, executors, administrators, and assigns, forever.

IN WITNESSES WHEREOF, That said party of the first part has set his hand and seal the day and year first above written.

WITNESSES:

_____

_____

_____

_____

Jan Colbert Killough

_____ [SEAL]

_____ [SEAL]

_____ [SEAL]

U.S. DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS
MIAMI, OKLAHOMA
CERTIFIED TRUE COPY
_____  7/10/07
Certifying Officer     Date

**FILED**

07 0400036

JUL 12 2007
DOCUMENT NO._____
EASTERN OKLAHOMA
TITLE SERVICES OFFICE

Acknowledgements must be in accordance with the forms presented by the State in which the land is situated.

STATE OF _Oklahoma_ )
                                         ) ss.
COUNTY OF _Ottawa_ )

BE IT REMEMBERED, That on this _18th_ day of _May_ , A.D. _2007_ before the undersigned, a __Notary Public__ in and for the County and State aforesaid, personally appeared __Jan Colbert K Ilough__
to me personally known to be the identical person who executed the within instrument of writing, and such person duly acknowledge the execution of the same.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my seal on the day and year last hereinabove written.

_Penny Sexton_

Notary Public
(title)

My Commission expires: _9-2-09_
My Commission number: _01013617_

UNITED STATES
DEPARTMENT OF THE INTERIOR
Bureau of Indian Affairs
Miami Agency
Miami, Oklahoma 74055

The within deed is hereby approved: Pursuant with authority delegated by 209 DM 8, 230 DM 1,3 IAM 4.1, and the Muskogee Area Addendum 9901 2 3IAM 4 issued 8/24/1999.

Approval Date: _5-18-07_

_Paul Yates_

(ACTING)   Superintendent

FILED
07 0400036
DOCUMENT NO.
JUL 12 2007
EASTERN OKLAHOMA
TITLE SERVICES OFFICE

Exhibit A

Land Interests Owned by Jan Colbert Killough, ID # 808U016020, located within the jurisdictional boundary of the Quapaw Tribe of Indian of Oklahoma

Date Printed May 18, 2007

Page 1

| Tract Number | Legal Description | Undivided Interest | Consideration |
|---|---|---|---|
| 920 B 194 Mehnobah | SE_1/4 of NW_1/4, Section 17, Township 29 North, Range 25 East, Ottawa County, containing 40 acres, more or less. | 1/8 | $ 6,333.33 |



FILED

JUL 18 2007
07 0400036
DOCUMENT NO.
EASTERN OKLAHOMA
TITLE SERVICES OFFICE

# Exhibit 2(D)

5-5446
modified
May 2005
ILCP

Allottee: See Exhibit 'A'
Tract No: See Exhibit 'A'
Tran. No. 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-07

**UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS**

---

### DEED TO RESTRICTED INDIAN LAND

THIS INDENTURE, Made and entered into this ___6th___ day of ___July___, 2007, by and between:

Bobbie Rae Starr, ID # 926U001716, heir of allottee, a single woman dealing with her own separate property on which she does not reside, residing at Oklahoma City, Oklahoma, party of the first part,

And the _____USA in Trust for the Quapaw Tribe of Indians of Oklahoma_____ party of the second part

WITNESSETH, That said party of the first part, for consideration of six-thousand three-hundred thirty-three dollars and 33/100 ($6,333.33).

In hand paid, the receipt of which is hereby acknowledged, does hereby grant, bargain, sell, and convey unto said party of the second part the following described real estate and premises situated on lands located within the Quapaw Tribe of Oklahoma's jurisdictional boundary, to-wit:

> See attached Exhibit 'A' for undivided interests,
> Legal descriptions and considerations
> All located within the Indian Meridian.

This conveyance is made pursuant to the provisions of the Indian Land Consolidation Act Amendments of 2000, Public Law 106-462 (114 Stat., 1992), as amended by the American Indian Probate Reform Act of 2004, Public Law 108-374 (118 Stat., 1773). All revenue from said land interest(s) is encumbered by the United States of America until the purchase price has been repaid or the encumbrance is released by the Secretary.

Together with all improvements thereon and the appurtenances thereunto belonging.

And the said party of the first part, for herself and her heirs, executors, and administrators, does hereby covenant, promise, and agree to and with the said party of the second part, its successors and assigns, that she will forever warrant and defend the said premises against the claims of all persons, claiming or to claim by, through, or under herself only.

To have and to hold said described premises unto the said party of the second part, its successors, executors, administrators, and assigns, forever.

IN WITNESSES WHEREOF, That said party of the first part has set her hand and seal the day and year first above written.

WITNESSES:

_____          _Bobbie Rae Starr_ [SEAL]
                                    Bobbie Rae Starr

_____          _____ [SEAL]

_____          _____ [SEAL]

_____          _____ [SEAL]



**FILED**
JUL 24 2007
07 0400038
DOCUMENT NO.____
EASTERN OKLAHOMA
TITLE SERVICES OFFICE

Acknowledgements must be in accordance with the forms presented by the State in which the land is situated.

STATE OF _Oklahoma_ )
                                        ) ss.
COUNTY OF _Ottawa_ )

BE IT REMEMBERED, That on this _6th_ day of _July_ , A.D. _2007_ before the undersigned, a __Notary Public__ in and for the County and State aforesaid, personally appeared __Bobbie Rae Starr__

to me personally known to be the identical person who executed the within instrument of writing, and such person duly acknowledge the execution of the same.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my seal on the day and year last hereinabove written.

_Tamara R Summerfield_
Notary Public
(title)

My Commission expires: _6-29-08_
My Commission number: _04005813_

**UNITED STATES
DEPARTMENT OF THE INTERIOR**
Bureau of Indian Affairs
Miami Agency
Miami, Oklahoma 74055

The within deed is hereby approved: Pursuant with authority delegated by 200 DM 1, 209 DM 8, 230 DM 1, 3 IAM 4.1, and Muskogee Area Addendum 9901 to 3 IAM 4 issued 6/22/1999.

Approval Date: _7/9/2007_          _Mary Moss_
                                            (ACTING) Superintendent

# FILED

JUL 2 4 2007
07  0400038
DOCUMENT NO._____
EASTERN OKLAHOMA
TITLE SERVICES OFFICE

Exhibit A

Land Interests Owned by Bobbie Rae Starr, ID # 926U0017-6, located within the jurisdictional boundary of the Quapaw Tribe of Indians of Oklahoma.

Date Printed July 6, 2007

Page 1

| Tract Number | Legal Description | Undivided Interest | Consideration |
|---|---|---|---|
| 920 B 194 Mehnobah | SE 1/4 of NW 1/4, Section 17, Township 29 North, Range 25 East, Ottawa County, containing 40 acres, more or less. | 1/6 | $ 6,333.33 |



F I L E D

JUL 24 2007
07 040038
DOCUMENT NO.
EASTERN OKLAHOMA
TITLE SERVICES OFFICE

Exhibit 2(E)

**F I L E D**

07  0400034
JUL 1 1 2007
DOCUMENT NO._____
EASTERN OKLAHOMA
TITLE SERVICES OFFICE

Land being conveyed was
Allotted to Moh-no-bah
Allottee No.Quapaw 178
Tract No. 194

**UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF INDIAN AFFAIRS**

**DEED TO RESTRICTED INDIAN LAND**

THIS INDENTURE, Made and entered into this 10 day of July, 2007, by and between the Secretary of the Interior on behalf of the Estate of Billy Lewis Urquhart, aka Billy Louis Urquhart, an Indian of the Creek Nation in the State of Oklahoma, party of the first part, does hereby transfer and convey pursuant to 25 United States Code § 2204 (1) to the Quapaw Tribe of Indians of Oklahoma, P. O. Box 765, Quapaw, Oklahoma 74363, of said reservation, party of the second part;

WITNESSETH, That whereas the lands hereinafter described were allotted to or inherited by the said party of the first part under the provisions of legislation by Congress pursuant to which said lands are restricted or held in trust by the United States for the benefit of said grantor and are not subject to taxation; nor to alienation or encumbrance without the consent of the Secretary of the Interior, and whereas the said party of the second part being an Indian Tribe desires to acquire said herein described lands subject to the same conditions, restrictions, and limitations as to taxation, alienation, or encumbrance as now rest there against;

NOW, THEREFORE, for and in consideration of the sum of $6,333.33 (Six thousand three hundred thirty-three dollars and thirty-three cents); the receipt of which sum is hereby acknowledged, the said party of the first part does hereby transfer, set over, and convey to and unto the said party of the second part all right, title, and interest of said party of the first part in and to the lands and premises situated in the County of Ottawa, State of Oklahoma, described as:

1/6 interest in the SE¼NW¼ of Section 17, Township 29 North, Range 25 East of the
Indian Meridian, Ottawa County, Oklahoma, containing 40.0 acres, more or less.

ogether with all the improvements thereon and the appurtenances thereunto belonging, subject to the express condition that the execution of his deed by the party or parties hereto or its approval by the Secretary of the Interior shall not operate in any manner to remove any of the restrictions now resting against said lands, or to remove any trust or other conditions imposed upon said land as expressed in the original trust or any other patent issued therefore, or any part thereof; it being distinctly understood and agreed that the scope and intent of this deed is imply to transfer and convey such right, title, and interest as the party of the first part now has in such lands to the said party of the second art subject to the conditions, restrictions, and limitations as now rest there against in the hands of the party of the first part.

TO HAVE AND TO HOLD SAID above-described heirs, executors, administrators, and assigns unto the said party of the second part, s heirs, executors, administrators, and assigns forever.

IN WITNESSES WHEREOF, That said party of the first part has hereunto set her hand and seal the day and year first above written.

_Mary Moss_
Acting Superintendent, Miami Agency, on behalf of the Estate
of Billy Lewis Urquhart

STATE OF OKLAHOMA        )
                         ) ss.
COUNTY OF Muskogee       )

BE IT REMEMBERED, That on this 10 day of July, A.D. 2007 before the undersigned, a _Notary Public_ in and for the County nd State aforesaid, personally appeared Mary Moss, Acting Superintendent, Miami Agency to me personally known to be the identical person who executed the within instrument of writing, and such person duly acknowledge the execution of the same.

IN TESTIMONY WHEREOF, I have hereunto subscribed my name and affixed my seal on the day and year last hereinabove written.

_Notary Public_

ty Commission expires:_____

UNITED STATES
DEPARTMENT OF THE INTERIOR
Bureau of Indian Affairs
Miami Agency
Miami, Oklahoma

OFFICIAL SEAL
MARY L. DOWNING
NOTARY PUBLIC OKLAHOMA
MUSKOGEE COUNTY
COMM. NO. 00005206 EXP. 04-20-98

Approved pursuant to authority delegated by 200 DM1, 209 DM 8, 230 DM 1, 3 IAM 4.1, and Muskogee Area Addendum 9901 to 3 IAM 4
sued 6/22/1999.

Date: 7/10/2007

_Mary Moss_
Acting Superintendent

Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BOARD OF COMMISSIONERS OF )
CHEROKEE COUNTY, KANSAS )
                                                        )
                    Plaintiff,                         )
                                                        )
         v.                                            )         Case No. 1:08-cv-00317-RWR
                                                        )         Judge Richard W. Roberts
KEMPTHORNE, et al.,                          )
                                                        )
                    Defendants.                      )         Declaration of Majel Russell
_____ )

I, Majel Russell, hereby declare and state as follows:

1.      I am the Deputy Assistant Secretary-Indian Affairs of the Department of the

Interior.  I am the second most senior official in the Bureau of Indian Affairs.  I have

been delegated authority from the Secretary of the Interior to manage Indian Affairs for

the Department of the Interior.


2.      The Secretary of the Interior is authorized to acquire and transfer land in trust for

the benefit of Indian tribes pursuant to the Indian Land Consolidation Act (ILCA), 25

U.S.C. § 2201 *et seq*.


3.      The Quapaw Tribe of Oklahoma (Quapaw Tribe) has a pending request to acquire

a 100 percent interest in the Me-Het-Tah-Spada Allotment pursuant to ILCA section

2204(a).  Section 2204 has a "forced sale" provision allowing that ". . . any Indian tribe

may purchase, at not less than fair market value and with the consent of the owners of the

interests, part or all of the interests in land that is ... subject to the jurisdiction of the tribe. . ." 25 U.S.C.§ 2204(a). Provided that ". . . the Indian tribe may purchase all interests in a tract . . . with the consent of the owners of undivided interests equal to at least 50 percent of the undivided interests in the tract . . ." The Quapaw Tribe owns a ninety-five percent interest in the Me-Het-Tah-Spada Allotment, and may thus request a forced sale from the remaining owners.

4.      The Department will take no action on the pending request by the Tribe to acquire a 100 percent interest in the Me-Het-Tah-Spada Allotment until completion of this litigation in the District Court.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief. Executed this 3rd day of March 2008.

Majel Russell
Deputy Assistant Secretary – Indian Affairs
United States Department of the Interior
1849 C St., N.W.
Washington, D.C. 20240

2

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **BOARD OF COMMISSIONERS OF** | ) | |
| **CHEROKEE COUNTY, KANSAS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:08-cv-00317-RWR** |
| | ) | Judge Richard W. Roberts |
| **DIRK KEMPTHORNE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## Certificate of Service

I hereby certify that on March 3, 2008, I electronically filed the foregoing **UNITED STATES' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** with the Clerk of the District Court using its CM/ECF system, which notified the following CM/ECF participant:

Jonathan Abram
HOGAN & HARTSON L.L.P.
555 13th Street, NW
Washington, DC 20004-1109
(202) 637-5600
Fax: (202) 637-5910
Email: jlabram@hhlaw.com

/s/
Gina L. Allery
Trial Attorney
United States Department of Justice
Environment and Natural Resources
Division
Indian Resources Section
P.O. Box 44378
L'Enfant Plaza Station
Washington, D.C.  20026-4378
(202) 305-0261
Gina.Allery@usdoj.gov

1