## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BOARD OF COMMISSIONERS OF    )
CHEROKEE COUNTY, KANSAS,    )
    )
    Plaintiff,    )
    )
v.    )    Case No. 1:08-cv-00317-RWR
    )    Judge Richard W. Roberts
KEMPTHORNE, et al.,    )
    )
    Defendants.    )
_____)

## REPLY IN SUPPORT OF THE UNITED STATES'S MOTION TO DISMISS
## AND RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION
## FOR PARTIAL SUMMARY JUDGMENT

RONALD J. TENPAS
Assistant Attorney General

AMY S. TRYON
GINA L. ALLERY
Trial Attorneys
U.S. Department of Justice
Environment and Natural Resources Division
Indian Resources Section
P.O. Box 44378
L'Enfant Plaza Station
Washington, D.C. 20026-4378
(202) 353-8596
amy.tryon@usdoj.gov

## <u>TABLE OF CONTENTS</u>

I. <u>INTRODUCTION</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. <u>ARGUMENT</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.     Plaintiff lacks standing to bring its Counts 2 and 3, which challenge the ILCA
             transfer of the Meh-No-Bah Allotment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

            1.     The ILCA transfer did not cause Plaintiff any injury. . . . . . . . . . . . . . . 4

            2.     Plaintiff is entitled to no relief that could redress its injuries. . . . . . . . . . 8

      B.     Any challenge to the United States's title to the Meh-No-Bah Allotment
             is barred by sovereign immunity under the Quiet Title Act. . . . . . . . . . . . . . . . 10

      C.     Plaintiff's Count 1 fails to state a claim because it seeks to require
             the United States to make an "Indian lands" determination where none
             is required by law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

III. <u>CONCLUSION</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# I.  INTRODUCTION

On June 23, 2008, Defendants, the United States Department of the Interior, the Secretary of the Interior, and the National Indian Gaming Commission ("NIGC") (collectively, "United States"), moved to dismiss Plaintiff's Amended Complaint for lack of jurisdiction and failure to state a claim.  Dkt. No. 17-2 ("Motion to Dismiss").  Plaintiff responded in opposition and moved for summary judgment on two of the three counts in its Amended Complaint on July 28, 2008.  Dkt. No. 20 ("Opposition").  The United States now submits this Reply Memorandum in support of its motion and in opposition to Plaintiff's motion.

In this lawsuit, Plaintiff challenges the United States's transfer of a parcel of land known as the Meh-No-Bah Allotment from a trust status benefitting several individual Indians to a trust status benefitting the Quapaw Tribe of Oklahoma ("Tribe").[1]  The transfer took place pursuant to the Indian Land Consolidation Act ("ILCA"), 25 U.S.C. §§ 2201-2221, which was enacted for the purpose of reducing fractionated ownership of Indian allotments and encouraging Indian tribes to consolidate land holdings.  See H.R. Rep. No. 97-908, at 9-10 (1982).  The Tribe has constructed a casino, which is now open for business, on the land.  Plaintiff's challenge to the ILCA transfer comprises Counts 2 and 3 of the Amended Complaint, which allege that the transfer was completed in violation of the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701-2721, and the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370f. Am. Compl. at 18-19.  Plaintiff also claims that the United States violated the law by not performing a so-called "Indian lands determination" with regard to the Meh-No-Bah Allotment

---

[1] As explained in the United States's Motion to Dismiss, the transfer of the Meh-No-Bah Allotment took place in five distinct transactions.  See Mot. to Dismiss at 2-4.

1

to officially determine whether gaming may lawfully occur on the land pursuant to IGRA. This claim is contained in Count 1 of the Amended Complaint. Id. at 17.

All three counts should be dismissed. Plaintiff lacks standing to challenge the ILCA transfer of the Meh-No-Bah Allotment because that transfer did not cause Plaintiff any injury; in fact, the transfer had no effect on Plaintiff whatsoever. Plaintiff correctly notes that the United States does not dispute the existence of its claimed injuries. Opp. at 15. However, none of these injuries were caused by the United States, much less by the lone federal action targeted in this lawsuit. All of Plaintiff's alleged injuries stem from the Tribe's operation of its casino. Plaintiff claims, "As a result of the government's actions, the casino development has been largely constructed and is now open for business." Id. at 2. Plaintiff's perception of the cause-and-effect chain regarding gaming on the Meh-No-Bah Allotment is faulty. The United States has done nothing to authorize, approve, allow, or cause construction or operation of the Tribe's casino. Accordingly, Plaintiff lacks standing to challenge the ILCA transfer. Its motion for summary judgment on Counts 2 and 3 of the Amended Complaint should be denied, and the United States's motion to dismiss those counts should be granted.

As to Plaintiff's Count 1, Plaintiff alleges that the United States violated the law "by failing to conduct an Indian lands determination with respect to the casino located on the Meh-No-Bah" Allotment. Opp. at 41. This allegation fails to state a claim. There is no law requiring the United States to make a so-called "Indian lands determination." Under certain circumstances, such as when a tribe has submitted a site-specific gaming ordinance or management contract for NIGC approval, the United States will determine whether the site is Indian lands before acting on the submission. But no such trigger submission has occurred here. Absent such a trigger,

nothing in IGRA or any other law requires the United States to render the "Indian lands determination" Plaintiff seeks.  Accordingly, Count 1 fails to state a claim and should be dismissed.

## II. <u>ARGUMENT</u>

### A.    **Plaintiff lacks standing to bring its Counts 2 and 3, which challenge the ILCA transfer of the Meh-No-Bah Allotment.**

Plaintiff's Amended Complaint identifies but one final agency action for review by this court: the United States's transfer under ILCA of the Meh-No-Bah Allotment into trust status benefitting the Quapaw Tribe.  Plaintiff lacks standing to challenge this ILCA transfer, and Plaintiff's Counts 2 and 3, which seek to set aside the transfer, should accordingly be dismissed for lack of jurisdiction.

Plaintiff claims that it has standing "under IGRA and under NEPA" and that the United States has obfuscated by focusing on ILCA because Plaintiff "has made no direct claims under ILCA."  Opp. at 14 & n.3.  However, plaintiffs invoking jurisdiction under the APA must challenge a final agency action taken by the federal government unless another statute grants a right of action.  <u>See</u> <u>Nat'l Ass'n of Home Builders v. Norton</u>, 415 F.3d 8, 13 (D.C. Cir 2005) (quoting 5 U.S.C. § 704).  In particular, when claiming that the United States did not comply with the requirements of NEPA, a plaintiff must identify the underlying federal action that allegedly triggered a duty to comply with NEPA, because NEPA contains no private right of action.  <u>See</u> <u>Karst Envtl. Educ. & Prot., Inc. v. EPA</u>, 475 F.3d 1291, 1295-96 (D.C. Cir. 2007).  Here, the only such action identified anywhere in the Amended Complaint is the ILCA transfer of the Meh-No-Bah Allotment.  This does not mean that Plaintiff is suing "under ILCA," but it does

mean that Plaintiff must establish standing to challenge the ILCA transfer, which is the only final federal action at issue.

Plaintiff lacks standing to challenge the ILCA transfer because that transfer did not cause Plaintiff any injury. Plaintiff's alleged injuries are all caused by the Tribe's gaming activities. The ILCA transfer did not allow, authorize, enable, or otherwise cause the Tribe to game. Plaintiff alleges various ways in which the ILCA transfer was unlawful, see Opp. at 26 (transfer made in violation of agency's guidance policy); id. at 29 (transfer made with insufficient environmental review), but the fact remains that the only final agency action at issue is the ILCA transfer. Without an injury caused by that agency action, Plaintiff lacks standing to challenge it by any route.

Plaintiff continues to labor under the impression that the ILCA transfer somehow caused or allowed gaming to go forward on the Allotment land. This is wrong. The ILCA transfer was not necessary for lawful gaming to occur on the land, and the transfer did not make gaming lawful where it otherwise would not have been. Plaintiff has alleged a variety of injuries, but those injuries, by Plaintiff's own description, all derive from the Tribe's construction and operation of its casino. Plaintiff has not been harmed, or even affected at all, by the ILCA transfer. Its challenge to the transfer should be dismissed for lack of standing.

**1.      The ILCA transfer did not cause Plaintiff any injury.**

The ILCA transfer was not responsible for Plaintiff's injuries, which are all caused by gaming. In fact, the transfer was neither necessary nor sufficient for gaming to take place on the Allotment. For Indian gaming to be lawful, it must meet the various requirements of IGRA. For example, "IGRA requires tribes that engage or intend to engage in 'class III gaming' . . . to

4

negotiate, enter into, and comply with a compact between the tribe and the state in which the gaming will occur." <u>San Manuel Indian Bingo & Casino v. Nat'l Labor Relations Bd.</u>, 475 F.3d 1306, 1317 (D.C. Cir. 2007) (citing 25 U.S.C. § 2710(d)(1)(C), (3)(A)).  In addition, Class III Indian gaming can be lawful "only if authorized by a tribal ordinance or resolution approved by the Chairman of the National Indian Gaming Commission." <u>Id.</u> at 1318 (citing 25 U.S.C. § 2710(d)(1)(A)).  There are many restrictions on Indian gaming that have nothing to do with ownership of the land, so the mere fact that the Quapaw Tribe is now the trust beneficiary of the Meh-No-Bah Allotment does not mean that gaming is suddenly allowed on the land.  To suggest that the mere transfer of the Allotment from one trust status to another authorized or caused the Quapaw Tribe's gaming to go forward is to ignore the entire statutory scheme that was designed to regulate Indian gaming.

In addition, the Meh-No-Bah Allotment was equally eligible for gaming before and after the ILCA transfer, because its status as "Indian lands" did not change.  When lawful gaming is permitted, it is permitted on "Indian lands," a term which includes individual as well as tribal trust or restricted land.  25 U.S.C. § 2703(4).[2]  Under IGRA's statutory definition, the Meh-No-Bah Allotment was "Indian lands" both before the ILCA transfer, when the trust beneficiaries were individual Indians, and after the transfer, when the trust beneficiary became the Tribe.  The simple change in trust beneficiary from the individual Indians to the Tribe did not affect the

---

[2]IGRA defines "Indian lands" as:
> (A) all lands within the limits of any Indian reservation; and
> (B) any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power.

25 U.S.C. § 2703(4).

Allotment's status as "Indian lands" and, therefore, had no effect one way or the other on the land's eligibility to host gaming.[3]  Accordingly, Plaintiff's injuries cannot fairly be traced to the ILCA transfer.

The United States does not suggest, as Plaintiff mistakenly states, that the ILCA transfer caused Plaintiff no harm because "individual Indian owners might have conducted gaming on the parcel even" if the transfer had not taken place.  Opp. at 17.  Rather, the Quapaw Tribe itself could have gamed on the land.  (The Tribe would likely pay rent to or otherwise compensate the individual trust beneficiaries.)  The United States has previously approved such arrangements. For example, the Secretary determined that lands held in trust for an individual Indian were "Indian lands" that could properly be used for tribal gaming by the Elk Valley Rancheria.  <u>See</u> Indian Land Op. for Elk Valley Rancheria, Betty Green Trust Land (Mar. 2, 2000).[4]  That individual leased her land to the tribe for gaming purposes.  In another instance, the Secretary determined that the Quinault Indian Nation could game on an allotment held in trust for individual tribal members because the allotment constituted "Indian lands."  <u>See</u> Indian Land Op. for Quinault Indian Nation (Sept. 25, 1996).

Plaintiff assigns import to the ILCA transfer that simply is not there, suggesting that the United States used ILCA to "side-step," Opp. at 2, the procedures it would otherwise have used to convey land to the Quapaw Tribe.  Plaintiff misunderstands what ILCA is about.  ILCA is not used to acquire land for gaming, but rather to consolidate land in tribal ownership and eliminate

---

[3]The Tribe must, of course, comply with the other restrictions and procedures laid out in IGRA in order to game lawfully.

[4]All of the Indian Land Opinions referred to in this Memorandum are available at www.nigc.gov by clicking on "Reading Room" followed by "Indian Land Opinions."

pernicious fractionated interests.  ILCA was designed to serve these legitimate, Congressionally

sanctioned purposes, and is entirely separate from the statute that provides the Secretary with

authority to acquire land in trust for Indian tribes, Section 5 of the Indian Reorganization Act

("IRA").  25 U.S.C. § 465.[5/]  It is true that in many cases where an Indian tribe wishes to game,

the tribe has no gaming-eligible land and must request the Secretary to take land into trust under

Section 5 for the purpose of gaming.  See, e.g., Mich. Gambling Opposition v. Kempthorne, 525

F.3d 23 (D.C. Cir. 2008); TOMAC v. Norton, 433 F.3d 852 (D.C. Cir. 2006); City of Roseville

v. Norton, 348 F.3d 1020 (D.C. Cir 2003).  In those cases, the Secretary's trust acquisition of the

land is a prerequisite to lawful gaming occurring there.  In other cases, however, the tribe's

desired gaming site is already eligible for gaming under IGRA and need not be taken into trust.

For example, a proposed gaming site may lie within a tribe's existing reservation.  25 U.S.C. §

2719(a)(1); see Indian Land Op. for Puyallup Tribe (Nov. 12, 2004); Indian Land Op. for

Picayune Rancheria (Dec. 3, 2001).  Or the site may have been in longstanding trust or restricted

fee status, thereby requiring no further acquisition.  See Indian Land Op. for Big Sandy

Rancheria (Sept. 6, 2006); Indian Land Op. for Quinault Indian Nation (Sept. 25, 1996).

 For these reasons, Plaintiff is wrong to claim that all of the rules and procedures

applicable to Section 5 trust acquisitions, such as compliance with the regulations in 25 C.F.R.

Part 151, also apply to ILCA transactions.  Plaintiff argues that ILCA "contains no exemption"

from the Part 151 regulations.  Opp. at 33.  But ILCA need not contain any exemption from

regulations that were promulgated to implement an entirely different statute: Section 5 of the

---

[5/]Section 5 of the IRA provides the Secretary with "broad authority to acquire property in trust for
Indian tribes." Sokaogon Chippewa Cmty. v. Babbitt, 214 F.3d 941, 943 (7th Cir. 2000).

IRA. The two statutes are very different in both purpose and effect. Plaintiff relies heavily in its Opposition on the fact that the United States knew in May 2001 that the Tribe planned to game on the Meh-No-Bah Allotment. <u>See</u> Opp. at 2, 16-17, 27. But any knowledge the United States may have had about the Tribe's plans does not change the fact that the ILCA transfer merely consolidated ownership of the fractionated interests in the parcel in the Tribe, and did not authorize or allow gaming to take place there.

**2.      Plaintiff is entitled to no relief that could redress its injuries.**

For similar reasons that causation is lacking, Plaintiff's injuries are not redressable by this Court. Plaintiff contends that the relief it seeks, "requiring the government to reopen the ILCA acquisitions and conduct any acquisition in accordance with law, including NEPA," would redress its gaming-related injuries because such relief "would result in a new decision about whether the parcel can be acquired by the Tribe . . . and whether the parcel would qualify as Indian lands. . . ." Opp. at 18. However, even if this Court were to invalidate the Secretary's transfer of the beneficial interests in the Allotment, that judgment would not necessarily stop the Tribe's gaming activity on the Allotment or affect the lawfulness or unlawfulness of such gaming, and thus would have no effect on Plaintiff's injuries. Because the ILCA transfer did not authorize or allow gaming on the Allotment, voiding the transfer would not prohibit gaming activity. And, as described above, the land would be equally eligible for gaming if it were held in restriction for individual Indians rather than the Tribe.

Nor would the NEPA review Plaintiff seeks resolve its injuries. Under NEPA, the Secretary need not prepare an Environmental Impact Statement ("EIS") for the transfer under ILCA of the Meh-No-Bah Allotment because the only effect of the transfer was a change in the

8

holder of the beneficial interest in the land. "Discretionary agency action that does not alter the status quo does not require an EIS." Nat'l Wildlife Fed'n v. Espy, 45 F.3d 1337, 1344 (9th Cir. 1995) (citation omitted). The transfer here did not facilitate, allow, or authorize gaming to occur on the property. With no regulatory or other consequences resulting, the ILCA transfer of the Meh-No-Bah Allotment was not a "major Federal action[] significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). In addition, any claim under NEPA is moot because the casino complex has been completed and is operational. Following the decision in Tennessee Valley Authority v. Hill, 437 U.S. 153 (1978), numerous cases have found that the completion of a project moots a NEPA challenge. See, e.g., Knaust v. City of Kingston, 157 F.3d 86, 87-88 (2d Cir. 1998) (NEPA action to stop construction of business park moot where related funds had been disbursed and park was complete); Friends of the Earth, Inc. v. Bergland, 576 F.2d 1377, 1379 (9th Cir. 1978) (NEPA action moot where mining company had already engaged in exploratory mining in national forest). Even were the United States to prepare an EIS, it would not necessarily preclude the Tribe from lawful operation of a casino. And, as explained below, the ILCA transfer is not tied to any requirement to make an "Indian lands" determination, so requiring the United States to re-do the ILCA transfer would not, as Plaintiff contends, result in any such determination taking place.

Plaintiff also states that "an injunction precluding gaming . . . would certainly redress the County's present injuries arising from operation of the behemoth development." Opp. at 18. This assertion begs the question. It is a truism that if Plaintiff is being injured by the operation of the casino, then this Court putting a halt to the casino's operation would resolve Plaintiff's injuries. However, to say that this truism demonstrates redressability assumes that Plaintiff is

9

entitled to the requested relief.[6]  It is not.  First, the Tribe is the entity engaging in gaming, not the United States, and the Tribe is not a party to this lawsuit.  Second, although the NIGC has the power to halt unlawful gaming under certain circumstances, the exercise of that power is committed to the NIGC's enforcement discretion.  Finally, and most fundamentally, an injunction shutting down the casino or requiring the NIGC to shut down the casino is simply not an appropriate judicial response to Plaintiff's APA challenge to the ILCA transfer of the Meh-No-Bah Allotment, which, as explained above, did not allow, authorize, or otherwise cause gaming on the property.  To the United States's knowledge, the gaming taking place on the property is not unlawful.  Plaintiff's injuries, which are caused by the Tribe's gaming, cannot be redressed by the present lawsuit, which challenges a federal action that is not responsible for the Tribe's gaming taking place.

**B.    Any challenge to the United States's title to the Meh-No-Bah Allotment is barred by sovereign immunity under the Quiet Title Act.**

In its Amended Complaint, Plaintiff noted that in the time since the filing of its original complaint, Plaintiff "has become aware of additional facts and circumstances surrounding the land acquisitions at the heart of this action, which has led to the amendment of its pleading." Am. Compl. at 2.  These "additional facts and circumstances" included the allegation that the Meh-No-Bah Allotment lost its restricted status sometime before 1921 and became fee simple, unrestricted land.  Id. at 6-7.  In response to this allegation, the United States noted in its Motion to Dismiss that, if the allegation were true and the Meh-No-Bah Allotment indeed was fee simple

---

[6] Cf. Bayvue Apts. Joint Venture v. Ocwen Fed. Bank FSB, 971 F. Supp. 129, 131 (D.D.C. 1997) (noting "somewhat circular" nature of standing analysis where redressability of plaintiff's injury depends on success of plaintiff's claim on the merits).

10

land prior to its transfer into trust for the Tribe, then Plaintiff's challenge to the transfer of the land would be barred by sovereign immunity.  Mot. to Dismiss at 25-26.  Federal sovereign immunity bars suits challenging the United States's title in trust or restricted fee Indian lands.  See Neighbors for Rational Dev., Inc. v. Norton, 379 F.3d 956, 961-62 (10th Cir. 2004) (citing United States v. Mottaz, 476 U.S. 834, 843 (1986)).  The Quiet Title Act ("QTA") waives the United States's sovereign immunity for suits to adjudicate disputed title to lands, but explicitly states that the waiver does not apply to trust or restricted Indian lands.  28 U.S.C. § 2409a.

The Meh-No-Bah Allotment is currently Indian lands, held in trust by the United States for the Quapaw Tribe.  Plaintiff explicitly seeks to invalidate the ILCA transfer of the Meh-No-Bah Allotment.  See Am. Compl. at 20-21 (asking for judgment "declaring that the defendants' acquisition of and conveyance of interests in land in the Meh-No-Bah parcel are presently invalid" and "an injunction requiring the Secretary of the Interior to reopen the trust acquisitions").  If Plaintiff were correct that the Allotment fell out of restriction decades ago and could not be considered trust or restricted land after that time, then invalidating the ILCA transfer of the Allotment, as Plaintiff seeks to do, would completely divest the United States of title to the land and vest fee title in the previous owners.  This is precisely the type of result that the QTA prohibits.

Plaintiff claims in a footnote that "APA claims challenging the agency's decision to _acquire_ Indian lands should be regarded as falling outside the Quiet Title Act."  Opp. at 23 n.9.[7] This is not the law.  The QTA plainly states that its waiver of federal sovereign immunity in suits

---

[7] In support of this assertion, Plaintiff cites only dicta in a footnote in an Eighth Circuit opinion that was later vacated and remanded by the Supreme Court.  See South Dakota v. U.S. Dep't of Interior, 69 F.3d 878, 881 n.1 (8th Cir. 1995), vacated & remanded, 519 U.S. 919 (1996).

to adjudicate title to real property "does not apply to trust or restricted Indian lands." 28 U.S.C. §

2409a. The statute makes no distinction among Indian lands based on how or why they came

into federal title or on any other basis. And courts have consistently held that the QTA bars suits

seeking to invalidate trust acquisitions of Indian land. See, e.g., Neighbors, 379 F.3d at 961;

Florida v. U.S. Dep't of Interior, 768 F.2d 1248, 1254 (11th Cir. 1985) (action seeking

declaratory judgment that trust acquisition of Indian lands was null and void barred by the QTA);

Shivwits Band of Paiute Indians v. Utah, 185 F. Supp. 2d 1245, 1249-52 (D. Utah 2002) (QTA

prohibited plaintiffs from challenging a trust acquisition), aff'd, 428 F.3d 966 (10th Cir. 2005).

Therefore, if Plaintiff's "additional fact" that the Meh-No-Bah Allotment lost its restricted status

before the trust acquisition at issue in this case is true, Plaintiff's request to invalidate that

acquisition is barred by sovereign immunity.

Plaintiff also contends that the Quiet Title Act does not apply to NEPA claims. Opp. at

23. This, too, is incorrect. Whether the QTA applies to a claim depends on the impact of the

relief sought by the claimant, not the particular statute under which the claimant is suing.

Plaintiff cites Neighbors in support of its contention, but the actual holding of Neighbors does

not help Plaintiff here. In Neighbors, the plaintiff sought to set aside the United States's

acquisition of land in trust for Indians because of alleged NEPA violations in the acquisition

process. The plaintiff also sought an injunction barring further development of the property until

the United States complied with NEPA. The court found that to the extent the plaintiff sought to

invalidate the trust acquisition, the suit was barred by sovereign immunity. Neighbors, 379 F.3d

at 961. The only part of the action that was not precluded by the QTA was the plaintiff's request

for an injunction barring development on the property, and this only to the extent it was

12

construed as a request to have the United States evaluate the environmental impacts of future development, as opposed to the impacts of the trust acquisition itself. Id. at 965 (distinguishing between types of relief sought). Neighbors accordingly does not help Plaintiff in this case, as Plaintiff expressly asks this Court to invalidate the United States's trust acquisition of the Meh-No-Bah Allotment.

In any event, in its Opposition, Plaintiff now demurs on the question whether the Meh-No-Bah Allotment fell out of restriction, claiming that the Court need not address the issue in order to adjudicate Plaintiff's claims. Opp. at 22. The United States agrees that all of Plaintiff's claims can be resolved as a matter of law.

**C.      Plaintiff's Count 1 fails to state a claim because it seeks to require the United States to make an "Indian lands" determination where none is required by law.**

Finally, in its Count 1, Plaintiff alleges that the United States violated the law "by failing to conduct an Indian lands determination with respect to the casino located on the Meh-No-Bah parcel." Opp. at 41. This count fails to state a claim. Judicial review of agency action under the APA is "limited to 'final agency action for which there is no other adequate remedy in a court.'" Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt., 460 F.3d 13, 18 (D.C. Cir. 2006) (citing 5 U.S.C. § 704) (emphasis omitted). Here, Plaintiff has not challenged any final agency action, but rather is complaining of an agency's failure to act. The APA permits a reviewing court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "The Supreme Court has confirmed that this provision 'sometimes' permits litigants to challenge an agency's inaction, but 'only where a plaintiff asserts that an agency failed to take a *discrete* action that it is *required to take*.'" Long Term Care Pharm. Alliance v. Leavitt, 530 F. Supp. 2d

13

173, 185 (D.D.C. 2008) (quoting <u>Norton v. S. Utah Wilderness Alliance</u>, 542 U.S. 55, 61, 64

(2004)) (emphasis in original). Here, Plaintiff cannot challenge the United States's failure to

make an "Indian lands" determination about the Meh-No-Bah Allotment because the United

States was not "required to" make such a determination.

      Contrary to Plaintiff's curious statement that there is "little question on the substance" of

its allegation, Opp. at 41, there is no independent obligation contained in IGRA or anywhere else

for the NIGC or the Secretary to conduct "Indian lands" inquiries. It is true that under IGRA,

Indian gaming may lawfully occur only on Indian lands, 25 U.S.C. § 2703(4), 2710(b)(1) &

(d)(1), and, unless certain exceptions apply, Indian gaming is prohibited on trust lands acquired

after IGRA's enactment date of October 17, 1988. <u>Id.</u> § 2719. Accordingly, when the NIGC or

the Secretary takes an action that permits gaming to occur on a specific site, the NIGC or the

Secretary must first determine that the land in question qualifies as Indian lands. For example,

when a tribe submits for the Chairman's approval a site-specific gaming ordinance or

management contract, the NIGC makes a determination that the gaming to take place under the

ordinance or management contract will occur only on "Indian lands" and also that such lands will

be eligible for gaming under Section 20 of IGRA. <u>See</u> <u>Citizens Against Casino Gambling in Erie</u>

<u>County v. Kempthorne</u>, 471 F. Supp. 2d 295, 323-24 (W.D.N.Y. 2007). However, where the

tribe has not submitted a site-specific ordinance or management contract for NIGC approval,

there is no obligation to make an independent "Indian lands" determination. Here, the Quapaw

Tribe did not submit a site-specific gaming ordinance or management contract for gaming on the

Meh-No-Bah Allotment, and Plaintiff makes no allegation to the contrary.[8]  IGRA imposes no

obligation on the NIGC or the Secretary to make an independent, formal Indian lands

determination when a tribe announces or begins a casino project, or at any other time that strikes

Plaintiff's fancy.

Plaintiff suggests that the Tribe's submission of certain information in accordance with

new NIGC facility license regulations was a trigger requiring the NIGC to make an Indian lands

determination.  Opp. at 43.  This is incorrect.  The regulations in question require a tribe that is

planning to conduct Class II or Class III gaming under IGRA to notify the NIGC Chairman 120

days before opening any new gaming location.  25 C.F.R. § 559.2(a).  The tribe must submit a

copy of its facility license along with information concerning compliance with relevant

environmental and public health and safety laws.  Id. § 559.5.  However, the regulations require

only that the tribe submit certain information to the NIGC, and do not call for the NIGC to take

any action.  Under IGRA and the NIGC's regulations, the facility license is issued by the tribe in

each case, not the NIGC.  25 U.S.C. § 2710(b)(1); 25 C.F.R. § 559.3, 559.4.  The pre-opening

notification is provided to inform the NIGC of the new site, allow the NIGC to assure itself that

it will have regulatory jurisdiction over the new site, and, in rare cases, alert the NIGC Chairman

that an enforcement action may be necessary to prevent gaming on ineligible lands.[9]  In this case,

---

[8]The Tribe's non-site-specific gaming ordinance, as well as its non-site-specific compact with
the State of Oklahoma, is publicly available on the NIGC's website, www.nigc.gov.

[9]For example, if a tribe's submission indicates that the site where it is opening a gaming facility
is on Indian lands, but that the lands were taken into trust after October 17, 1988, and no
exception applies, then the NIGC Chairman may decide, in his discretion, to take an enforcement
action against the tribe for operating a gaming facility in violation of 25 U.S.C. § 2719(a).  In any
case, the NIGC takes no final agency action pursuant to the information it receives through the
new facility licensing regulations unless and until the NIGC Chairman issues a notice of

the Quapaw Tribe submitted its pre-opening notification to the NIGC on February 28, 2008.  The

NIGC responded with a "letter of receipt" on March 5, 2008.

Plaintiff suggests that the United States is deliberately ignoring the question of whether

the Meh-No-Bah Allotment is "Indian lands" and eligible for gaming under IGRA.  This is

simply not the case.  The pre-opening notification materials assist the NIGC in assessing its

enforcement jurisdiction by providing information as to whether the site is Indian lands upon

which the Tribe may lawfully game under IGRA.  If the site constitutes Indian lands but is

ineligible for gaming, the NIGC Chairman may exercise his enforcement discretion to close the

facility.[10]

However, that is not the case here.  The Meh-No-Bah Allotment is held in trust for the

benefit of the Quapaw Tribe and by the Tribe in restricted fee status.  See AR 19, 63, 111, 132,

140.[11]  As Plaintiff has known from the beginning of this lawsuit, in October 2007 the United

States determined that the Meh-No-Bah Allotment met one of IGRA's exceptions for gaming on

lands acquired in trust after October 17, 1988.  See Ex. 1(B) to Pl.'s Prelim. Inj. Mem., Bureau of

Indian Affairs Letter to NIGC (confirming that the Meh-No-Bah Allotment lies within the former

historic territory of the Tribe and is tantamount to "former reservation lands" under IGRA).

---

violation and the full Commission issues a decision on administrative appeal.  25 U.S.C. § 2714;
25 C.F.R. § 577.15.

[10]The "decision not to prosecute or enforce, whether through civil or criminal process, is a
decision generally committed to an agency's absolute discretion."  Heckler v. Chaney, 470 U.S.
821, 831 (1985).

[11]The United States transferred five-sixths of the undivided interests in the Allotment from a
trust status benefitting individual Indian landowners to a trust status benefitting the Quapaw
Tribe; the remaining one-sixth of the land was transferred to the Tribe in restricted fee status.

In short, Plaintiff misunderstands the requirements of IGRA. It is absolutely true that, as Plaintiff observes, land must be "Indian lands" in order for the NIGC to have enforcement jurisdiction. See, e.g., 25 U.S.C. § 2706(b)(1) ("The Commission – (1) shall monitor class II gaming conducted on Indian lands on a continuing basis . . . ."). However, the NIGC is not required to issue any formal decision regarding its jurisdiction over a new gaming site except in certain situations, none of which is present in this case. In the absence of a site-specific gaming ordinance, a management contract, or the Chairman's initiation of an enforcement action for illegal gaming on Indian lands, there simply is no duty to issue a formal decision regarding the "Indian lands" status of any particular parcel. Accordingly, Plaintiff's Count 1 should be dismissed for failure to state a claim.

### III.  CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for partial summary judgment and grant the United States's motion to dismiss the Amended Complaint, or in the alternative grant summary judgment in favor of the United States.


Dated: August 11, 2008                    Respectfully submitted,

                                          RONALD J. TENPAS
                                          Assistant Attorney General
                                          United States Department of Justice
                                          Environment and Natural Resources Division


                                               /s/
                                          _____

                                          AMY S. TRYON
                                          GINA L. ALLERY
                                          Trial Attorneys
                                          United States Department of Justice

Environment and Natural Resources Division
Indian Resources Section
P.O. Box 44378
L'Enfant Plaza Station
Washington, D.C.  20026-4378
(202) 353-8596
amy.tryon@usdoj.gov


OF COUNSEL:

MARIA WISEMAN
United States Department of the Interior
Office of the Solicitor
1849 C Street NW
Washington, D.C.  20240

JEFFREY NELSON
National Indian Gaming Commission
Office of General Counsel
1441 L Street NW
Washington, D.C.  20005

18

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BOARD OF COMMISSIONERS OF<br>CHEROKEE COUNTY, KANSAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:08-cv-00317-RWR |
| | ) | Judge Richard W. Roberts |
| KEMPTHORNE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————————— | ) | |

UNITED STATES'S RESPONSE TO PLAINTIFF'S
STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 7(h), Defendants, the United States Department of the Interior, the

Secretary of the Interior, and the National Indian Gaming Commission ("NIGC") (collectively,

"United States"), by undersigned counsel, respectfully submit the following response to the

Statement of Undisputed Material Facts in Support of Motion for Summary Judgment filed by

Plaintiff, Board of Commissioners of Cherokee County, Kansas.

Local Rule 7(h) requires an opponent to a motion for summary judgment to submit a

statement of genuine issues setting forth all material facts as to which it contends there exists a

genuine issue necessary to be litigated. As set forth in the United States's Motion to Dismiss or

in the Alternative for Summary Judgment, this Court lacks jurisdiction over two of the three

counts in Plaintiff's Amended Complaint, and the third count fails to state a claim. Even if this

Court has jurisdiction over the entire action, it arises from the waiver of sovereign immunity

contained in the Administrative Procedure Act ("APA"), 5 U.S.C. § 706.  Therefore, judicial

review is limited to the record before the agency at the time the decision was made.  The scope of

review of this determination is limited to the administrative record filed in this case.

      The general rule, as articulated by the Supreme Court, is that extra-record materials

should not be considered during judicial review of final agency action:

> [W]e have consistently expressed the view that ordinarily review of
> administrative decisions is to be confined to "consideration . . . of
> the evidence on which it was based."  "[T]he focal point for
> judicial review should be the administrative record already in
> existence, not some new record made initially in the reviewing
> court."

Fed. Power Comm'n v. Transcon. Gas Pipe Line Corp., 423 U.S. 326, 331 (1976) (quoting

United States v. Carlo Bianchi & Co., 373 U.S. 709, 714-715 (1963); Camp v. Pitts, 411 U.S.

138, 142 (1973)).  In short, consideration of administrative action on the basis of extra-record

material is "incompatible with the orderly functioning of the process of judicial review,"

Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 169 (1962), because it substitutes a

new record for the one upon which the agency acted and imposes upon the court the role assigned

by Congress to the agency.  Accordingly, judicial review of agency action limited to the record

before the agency serves "not to deprecate, but to vindicate, the administrative process, for the

purpose of the rule is to avoid 'propel(ling) the court into the domain which Congress has set

aside exclusively for the administrative agency.'" Id. (citing Phelps Dodge Corp. v. Nat'l Labor

Relations Bd., 313 U.S. 177, 197 (1941); SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)).

      Courts have followed this principle, explaining that judicial review is to be based on the

administrative record "'that was before the Secretary at the time he made his decision.'"  Walter

2

O. Boswell Mem'l Hosp. v. Heckler, 749 F.2d 788, 792 (D.C. Cir. 1984) (quoting Citizens to

Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971)) (emphasis in original); see also

Envtl. Def. Fund, Inc. v. Costle, 657 F.2d 275, 284 (D.C. Cir. 1981).

Thus, on the basis of well-established precedent in the Supreme Court, review under the

APA of the Secretary's transfer of the Meh-No-Bah Allotment into a trust status benefitting the

Quapaw Tribe is confined to the administrative record. No trial on facts is appropriate.

The United States therefore submits that the guidance of Local Rule 7(h) regarding a

"statement of genuine issues setting forth all material facts as to which it is contended there

exists a genuine issue necessary to be litigated" is not applicable. There can be no genuine issues

of fact that require extra-record admissions or trial in an APA case such as this. The United

States believes there are no material facts in dispute in this case.

The United States has nonetheless reviewed Plaintiff's Statement of Undisputed Material

Facts and responds in the following manner.

1.    Statement not disputed.

2.    Statement not disputed.

3.    Statement not disputed.

4.    Statement partially disputed. The legal description of the land known as the Meh-
      No-Bah Allotment is the SE ¼ of the NW ¼, Section 17, Township 29 North,
      Range 25 East, Ottawa County, Oklahoma. See AR 21.

5.    Statement partially disputed. The letter cited to by Plaintiff indicates that the
      casino project comprises approximately 85 acres in Oklahoma, approximately 63
      acres in Kansas, and approximately 30 acres in Missouri. Ex. 1(C) to Pl.'s Prelim.

Inj. Mem. Thus, according to Plaintiff's source, approximately 63 of 178 acres, or 35.4 percent of the casino development footprint, lies in Cherokee County, Kansas.

6.     Statement disputed. Plaintiff has provided no documentation to support this statement, and the United States has no independent knowledge of its veracity.

7.     Statement not disputed.

8.     Statement partially disputed. Plaintiff has provided no documentation to support this statement, and the United States has no independent knowledge of its veracity.

9.     Statement disputed. Plaintiff has provided no documentation to support this statement, and the United States has no independent knowledge of its veracity. The document cited to does not support the statement.

10.    Statement not disputed.

11.    Statement disputed. Plaintiff states that "the government acquired all interests in the parcel for the benefit of the Quapaw Tribe on which to build the Tribe's casino." A five-sixths interest in the Meh-No-Bah Allotment is held by the United States in trust for the Quapaw Tribe. A one-sixth interest is held by the Tribe in restricted fee. None of the transfers effected by the United States was made for the purpose of gaming by the Tribe.

12.    Statement partially disputed. Two of Plaintiff's citations do not support the statement. Page 145 of the Administrative Record makes no reference to gaming or to plans for a casino. Paragraph 8 of the Michael White Declaration improperly

4

relies on extra-record statements and in any event the United States disputes the content of those statements.

13.    Statement not disputed.

14.    Statement not disputed.

15.    Statement not disputed.

16.    Statement not disputed.

17.    Statement not disputed.

18.    Statement partially disputed.  The Michael White Declaration improperly relies on extra-record statements.

19.    Statement disputed.  The Michael White Declaration improperly relies on extra-record statements.

20.    Statement not disputed.

21.    Statement partially disputed.  The Checklist for Gaming Acquisitions constitutes internal guidance and is not binding on the Secretary.

22.    Statement not disputed.

23.    Statement not disputed.

24–34. Statements partially disputed.  These statements allege injuries incurred by Plaintiff.  The United States notes that Plaintiff has not documented or quantified such injury other than through conclusory declarations.  However, the United States's Motion to Dismiss accepts the allegations within Plaintiff's Amended Complaint as true.  Even so, Plaintiff's injuries do not confer standing to challenge the transfer of beneficial interest in the Meh-No-Bah Allotment from

5

individual Indians to the Quapaw Tribe.

Dated: August 11, 2008                    Respectfully submitted,

                                          RONALD J. TENPAS
                                          Assistant Attorney General
                                          United States Department of Justice
                                          Environment and Natural Resources Division

                                               /s/
                                          _____

                                          AMY S. TRYON
                                          GINA L. ALLERY
                                          Trial Attorneys
                                          United States Department of Justice
                                          Environment and Natural Resources Division
                                          Indian Resources Section
                                          P.O. Box 44378
                                          L'Enfant Plaza Station
                                          Washington, D.C.  20026-4378
                                          (202) 353-8596
                                          amy.tryon@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BOARD OF COMMISSIONERS OF | ) | |
| CHEROKEE COUNTY, KANSAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:08-cv-00317-RWR |
| | ) | Judge Richard W. Roberts |
| KEMPTHORNE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**[PROPOSED] ORDER
GRANTING THE UNITED STATES'S MOTION TO DISMISS PLAINTIFF'S FIRST
AMENDED COMPLAINT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT**

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 56, Defendants, the

"United States," moved this Court for an Order dismissing the First Amended Complaint in this

action or in the alternative for summary judgment.  Plaintiff responded and moved for partial

summary judgment.  Upon consideration of all papers in support of and opposition to the

motions,

IT IS HEREBY ORDERED that the First Amended Complaint is dismissed.

Dated:_____, 2008        _____

Hon. Richard W. Roberts
United States District Judge
District of Columbia

**IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BOARD OF COMMISSIONERS OF | ) | |
| CHEROKEE COUNTY, KANSAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:08-cv-00317-RWR |
| | ) | Judge Richard W. Roberts |
| KEMPTHORNE, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>Certificate of Service</u>**

    I hereby certify that on August 11, 2008, I electronically filed the foregoing **Reply in Support of the United States's Motion to Dismiss and in Opposition to Plaintiff's Motion for Partial Summary Judgment** with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participant in this case:

Jonathan Abram
HOGAN & HARTSON L.L.P.
555 13th Street, NW
Washington, DC 20004-1109
(202) 637-5600
Fax: (202) 637-5910
Email: jlabram@hhlaw.com

                /s/
                AMY S. TRYON
                <u>Trial Attorney</u>
                U.S. Department of Justice
                Environment and Natural Resources Division
                Indian Resources Section
                P.O. Box 44378
                L'Enfant Plaza Station
                Washington, DC 20026-4378
                (202) 353-8596
                amy.tryon@usdoj.gov